DAY PITNEY LLP
One Jefferson Road
Parsippany, NJ   07054
(973) 966-6300

**Attorneys for Plaintiffs Atlas Systems, Inc.
and Atlas Hana, LLC**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ATLAS SYSTEMS, INC., a New Jersey corporation and ATLAS HANA, LLC, a Delaware limited liability company, | : <br> : Civil Action No. 16- <br> : |
| Plaintiffs, <br> v. | : <br> : |
| ANJI REDDY, ATLAS HANA INC., a Florida corporation; VISION SOFT CONSULTING INC., a foreign corporation registered in New Jersey (d/b/a ATLASVSOFT INC. and/or ATLASVSOFT), | : **COMPLAINT AND DEMAND FOR** <br> **JURY TRIAL** <br> : <br> : <br> : |
| Defendants. | : |

     Plaintiffs Atlas Systems, Inc. ("**Atlas Systems**") and Atlas Hana LLC ("**Hana LLC**")

(collectively, "**Atlas Systems**" or "**Plaintiffs**"), by way of complaint against defendants Anji

Reddy ("**Reddy**") and his related business entities Atlas Hana, Inc. ("**Hana Inc.**") and Vision Soft

1

Consulting Inc., d/b/a Atlasvsoft, Inc. and/or Atlasvsoft (collectively, "**VSoft**") (collectively, "**Defendants**") allege as follows:

## NATURE OF ACTION

1.      This is an action by Plaintiffs against a terminated, ex-corporate officer and the various business entities he created for, *inter alia*, the purpose of:  (a) adopting the identical business name for a competing business to create confusion, resulting in trademark and trade name infringement; (b) willfully copying Atlas Systems' website and source code for a competing website, resulting in infringement of Atlas Systems' registered copyright in the same; (c) undermining his former employer's goodwill by engaging in self-dealing and contacting various existing and prospective customers after his termination in violation of various employment agreements giving rise to claims for breach of covenants, and in breach of the duty of loyalty and fiduciary duty; and (d) absconding with a company laptop to steal its confidential and proprietary contents and lock-out Atlas Systems, and gaining unauthorized access to Atlas Systems' social media accounts and hijacking them for his own purposes in violation of the Computer Fraud and Abuse Act and Defend Trade Secret Act.  Plaintiffs allege as follows, upon knowledge with respect to themselves and their own acts, and upon information and belief as to all other matters.

## PARTIES, JURISDICTION, AND VENUE

2.      Plaintiff Atlas Systems is a New Jersey corporation with its principal place of business at 101 Poor Farm Road, Princeton, New Jersey 08540.

3.      Plaintiff Hana LLC is a Delaware limited liability company with its principal place of business located at 101 Poor Farm Road, Princeton, New Jersey 08540.   Hana LLC has shared

95196282

ownership with Atlas Systems and was created as a related entity to further develop and pursue opportunities for specialized Atlas Systems' services.

4.     Defendant Anji Reddy is an individual, who resides at 60 Zaitz Farm Road, Princeton Junction, NJ  08550.  From on or about October 26, 2015 to December 31, 2015, Reddy served as the Executive Vice President of SAP Solutions for Atlas Systems, and then from January 1, 2016 through on or about May 6, 2016, Reddy served as the Chief Executive Officer of Hana LLC.   In each of these positions, Reddy executed and agreed to certain restrictive covenants in agreements dated October 15, 2015 ("Oct. 2015 Agreement") and January 1, 2016 ("Jan. 2016 Agreement").

5.     On December 17, 2015, while still an employee of Atlas Systems and unbeknownst to his employer, Reddy formed Defendant Atlas Hana Inc., which is a Florida corporation with its principal place of business at 3805 Shoreview Drive, Kissimmee, Florida 34744.   Reddy was the incorporator and President of Hana Inc.

6.     Defendant Vision Soft Consulting, Inc., is a foreign corporation registered in the State of New Jersey doing business as Atlasvsoft, Inc. and/or Atlasvsoft, and is under the direction and control of Reddy.

7.     Hana Inc. and VSoft, by and through, Reddy have conducted, and are continuing to conduct business in the State of New Jersey and elsewhere in the United States and have offered SAP HANA and S/4 platform services to customers and prospective customers of Plaintiff Atlas Systems.

8.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 15 U.S.C. §§ 116, 1121, as this action arises under the United States trademark law as

well as the United States copyright laws, 17 U.S.C. § 101 *et seq.*, Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030 *et seq.,* and Defend Trade Secret Act, 18 U.S.C. § 1836 *et seq.*

9.      This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(a).   There exists a common nucleus of facts between the Federal claims and the highly related breach of contract and other state statutory and common law claims.

10.      Both the State and Federal law claims derive from a common nucleus of operative facts because Defendants violated copyright, trademark, and trade secret law when soliciting customers, which is a violation of the covenants in Reddy's employment agreements with Plaintiffs.   The claims asserted against Defendants would ordinarily be tried in one judicial proceeding.

11.      Judicial economy and prudent use of resources warrant that the State and Federal law claims be tried in one judicial proceeding.

12.      The amount in controversy, exclusive of interest and costs, exceeds $75,000.

13.      This Court has personal jurisdiction over Defendant Reddy because he resides in New Jersey and this Court has personal jurisdiction over Hana Inc. and VSoft because, among other reasons, the companies conduct business in New Jersey.   Defendants have committed acts of copyright and trademark infringement within this judicial district.   Upon information and belief, Defendants have committed acts in contravention to the CFAA within this judicial district.

14.      Venue is proper pursuant to 28 U.S.C. § 1391(b) because, among other reasons, the events giving rise to the claims herein occurred and continue to occur in this judicial district.

4

95196282

## NATURE OF PLAINTIFFS' BUSINESS

15.     Atlas Systems is a leading technology innovator and provider of customized software solutions, database design and management, and information technology consulting (the "**Atlas Systems Goods and Services**").   Since 2003, Atlas Systems and its affiliated companies have provided the Atlas Systems Goods and Services throughout the United States and abroad under its ATLAS trademark.   Plaintiffs' ability to provide superior products and services in six key business areas (including compliance and governance, health care, SAP, learning, technology, and Oracle-based data management) has led to the development of significant goodwill in the ATLAS trademark along with the development of key client relationships with several Fortune 100 companies.

16.     Atlas Systems has promoted its ATLAS trademark on the Internet, in its domain name, in print and other advertising and word of mouth endorsement.   Atlas Systems has invested, and continues to invest, heavily in its ATLAS brand as it represents the significant goodwill created from over thirteen years of use.

17.     Plaintiffs have spent substantial time and money in advertising and promoting the ATLAS trade name in association with the Atlas Systems Goods and Services.

18.     The ATLAS trademark is an important asset of Atlas Systems, and has been used substantially and continuously in the United States and abroad since 2003.

19.     As a result of Atlas Systems' continuous marketing efforts and by virtue of its high quality product and services, the ATLAS trade name and trademark are widely recognized and valued within its industry and among its customers.

95196282

20.     Atlas Systems' ATLAS trademark is inherently distinctive and entitled to the highest level of protection for the Atlas Systems Goods and Services.

21.     Atlas Systems' ATLAS trademark has acquired secondary meaning in its industry and marketplace.

22.     SAP SE is a multinational software organization that develops enterprise software used by businesses in virtually all industries to manage the complexity of nearly all business operations and customer relations through a single software platform, as well as collects, integrates and manipulate various databases and data sources.

23.     Due to the complexity of the SAP SE software environment and high level of customization, specialty information technology companies, such as Atlas Systems, assist users with designing and integrating systems unique to each individual business' needs.   The various configurations and modules offered by SAP SE require significant amounts of knowledge and experience to operate the software to its fullest potential.

24.     There is a significant cost and license associated with becoming a recognized SAP SE partner, with authorization to design, implement and customize SAP SE software-based environments.

25.     Atlas Systems has been an authorized SAP SE Partner since October 21, 2015.

26.     In February 2015, SAP SE released its HANA and S/4 software platforms, which provide a new level of data analytics to users and offers additional features and implementations to meets business needs.

27.     As part of its commitment to product development and specialization to meet clients' needs, in October 2015, Atlas Systems created Hana LLC, a related business entity, to

6

further develop and specialize in the delivery of software, consulting and information technology services associated with the HANA and S/4 platform – a highly complex and specialized corporate database and analytics services.

28.     Hana LLC has utilized the ATLAS name and mark to capture and utilize the goodwill associated with the same in the information technology industry and among its clients.

29.     Atlas Systems registered the domain name www.atlashana.com on October 15, 2015 for use in connection with the Hana LLC business enterprise.

30.     In connection with the promotion of Hana LLC and the www.atlashana.com domain, Plaintiffs hired a web development company to design and launch a unique and fully customized website, which went live on the Internet on April 12, 2016 (the "Hana LLC Website").

31.     Atlas Systems has secured US Copyright registrations for the Hana LLC Website (Reg. No. VA 2-008-919, granted July 1, 2016) and the underlying HTML code (Reg. No. TX 8-210-184, granted July 1, 2016).

32.     On or about January 29, 2016, Hana LLC created and launched a customized LinkedIn page located at https://www.linkedin.com/company/atlas-hana to advertise the expansion of the ATLAS services in the Hana and S/4 program areas (the "**Hana LLC LinkedIn**").

33.     Atlas Systems has expended significant time and effort to become a recognized and certified operator within the SAP HANA and S/4 environment, and is authorized to hold itself out as an official SAP Partner.

95196282

34.     At the request of SAP SE, on April 21, 2016 Atlas Systems ceased using and promoting the name "HANA" in its business name, and all operations previously conducted under the Hana LLC name are now offered by Atlas Systems under its ATLAS name and mark.

35.     Atlas Systems advertises its HANA and S/4 capabilities and services via the Hana LLC Website, hosted at www.atlassystems.com/sap/.

36.     Atlas Systems has expended significant time, effort and money to develop and market the Hana LLC goods and services under the ATLAS name and mark and generate business and goodwill in the same.

**PLAINTIFFS' HIRING OF REDDY**

37.     On or about October 15, 2015, Reddy approached the owner of Atlas Systems and told him that Reddy had lost his employment and was looking for a new job within the software and information technology industry.

38.     On or about October 26, 2015, Atlas Systems hired Reddy to further market Atlas Systems' expertise in the HANA and S/4 platforms, as Executive Vice President of SAP Solutions for Atlas Systems.

39.     In connection with this employment and for other valuable consideration, Reddy executed an employment agreement (the "2015 Covenant Agreement").   (*See* Oct. 2015 Agreement).

40.     In order to protect Plaintiffs' customer relationships, goodwill, and confidential information, Reddy was asked to agree to, and did agree to, certain obligations in his 2015 Covenant Agreement, including, but not limited to, non-competition, non-solicitation of

95196282

customers, non-solicitation of employees and non-disclosure provisions, and an employee invention assignment agreement detailed below. (Oct. 2015 Agreement, ¶¶ 5-8).

41.     In reliance on Reddy's conduct and representations, Atlas expended in excess of $250,000 in startup costs, including Reddy's salary and the retention of his sales team, the development of the website and marketing materials, the acquisition of the SAP partnership, and other expenses.

42.     In connection with Plaintiffs' further development of this business and reliance on the conduct and representations of Reddy, Plaintiffs formed Hana LLC on October 22, 2015.   At the time, Reddy participated in the discussion and decision to develop Hana LLC as a vehicle to specialize in the HANA and S/4 platform services offered by Atlas Systems.   Reddy received a copy of this Certificate of Formation on or about October 28, 2015.

43.     Plaintiffs offered, and Reddy accepted, the position as Chief Executive Officer of Hana LLC on or about January 1, 2016.

44.     In connection with his employment with Hana LLC and for other valuable consideration, Reddy executed the Jan. 2016 Agreement.   (Collectively, the Oct. 2015 Agreement and the Jan. 2016 Agreement are referred to as the "Covenant Agreements").

45.     The Oct. 2015 and the Jan. 2016 Agreement included various restrictive covenant obligations, including but not limited to, non-competition, non-solicitation of customers, non-solicitation of employees and non-disclosure provisions, and an employee invention assignment agreement.

46.     Reddy agreed to an in-term non-competition covenant in the Covenant Agreements, which provided in pertinent part as follows:

9

95196282

> as a condition of your employment you agree that during your employment with [Plaintiffs], you will not engage in any work, trade or business for your own account, or for or on behalf of any other person, firm or corporation other than [Plaintiffs], as an employee, consultant, agent, contractor or otherwise.

(Oct. 2015 Agreement & Jan. 2016 Agreement, ¶ 2).

47.    Reddy also agreed to provisions protecting Plaintiffs' intellectual property, including the following provision:

> All copyrights, patents, trademarks, trade secrets, other intellectual property rights and confidential and proprietary information of [Atlas Systems] are, and shall remain, owned exclusively by [Atlas Systems].  All materials created by [Reddy] relating to the business of [Atlas Systems] shall be considered a "work made for hire" under the United States Copyright Act. [Reddy] agree to assign, upon request, to [Atlas Systems] any patent or patent application for any patentable materials created by [Reddy] relating to the business of [Atlas Systems] and to provide reasonable support (at [Atlas Systems'] expense) for [Atlas Systems'] prosecution of such patent.

(Oct. 2015 Agreement & Jan. 2016 Agreement, ¶ 5).

48.    Reddy agreed to protect and preserve, and not use the confidential information of Plaintiffs in the Covenant Agreements, including provisions that provide:

> "Confidential Information" shall include, but is not limited to, [Atlas Systems'] customer lists, marketing plans and procedures, databases, trade secrets, business plans, forecasts, projections, analyses, software, hardware, system designs, specifications, processes, documentation, code, architecture, structure, protocols and all other business and intellectual property and information. [Reddy] agree to retain the 'Confidential Information' in confidence and to use the 'Confidential Information' for the sole purpose of [Reddy's] employment by [Atlas Systems], and [Reddy] expressly agree not to otherwise appropriate, disclose or use such 'Confidential Information' for [Reddy's] own use or for the use of any other person or entity. All 'Confidential Information' disclosed shall remain the property of [Atlas Systems], and all documents and other materials containing 'Confidential Information' shall remain the property of [Atlas Systems]. Upon request of [Atlas Systems], you will return to [Atlas Systems] or destroy (providing a sworn, written certification of such destruction to [Atlas Systems]) all copies of the 'Confidential Information.'"

(Oct. 2015 Agreement & Jan. 2016 Agreement, ¶ 6).

10

49.   The Covenant Agreements imposed obligations on Reddy concerning Atlas Services' customers and prospective customers, including provisions such as:

> In [Reddy's] employment position, [Reddy] may develop certain relationships with [Atlas Systems] clients and customers leading to awareness of other services desired. [Reddy] will promptly report all such opportunities to the executive management of [Atlas Systems] and [Reddy] agree that [Reddy] shall not directly or indirectly, pursue such opportunities for [Reddy's] own benefit or for the benefit of any other person or entity.

(Oct. 2015 Agreement & Jan. 2016 Agreement, ¶ 7).

50.   With regard to protection and preservation of the confidential information, customer relationships and goodwill of Plaintiffs, Reddy agreed to the following:

> during the period of your employment and for a period of one (1) year after the cessation of your employment with [Atlas Systems] for any reason whatsoever, voluntary or involuntary, [Reddy] will not directly or indirectly, (a) provide products or services to any [Atlas Systems] Client or Prospect; (b) solicit for business, or accept business from, any [Atlas Systems] Client or Prospect; (c) enter into any agreement with or assign personnel to any [Atlas Systems] Client or Prospect; (d) accept employment with any [Atlas Systems] Client or Prospect; (e) offer employment to any employee of [Atlas Systems]; (f) attempt to induce or entice any regular or temporary employee or consultant of [Atlas Systems] to leave the employ or engagement of [Atlas Systems]; (g) attempt to induce or entice any Client to terminate or decrease its business with [Atlas Systems]; (h) attempt to induce or entice any Prospect not to do business with [Atlas Systems].

(Oct. 2015 Agreement & Jan. 2016 Agreement, ¶ 8).

51.   For purposes of the Jan. 2016 Agreement, "Prospect" was defined as "any prospective customer or client with which [Atlas Systems] attempted to establish a business relationship during the twenty-four (24) months prior to the cessation of [Reddy's] employment with [Atlas Systems]. "Client' was defined as any customer with which [Atlas Systems] maintained a business relationship during the twenty-four (24) months prior to the cessation of [Reddy's] employment.  Similar definitions were used in the Oct. 2015 Agreement.

11

95196282

52.     The Jan. 2016 Agreement also contained a liquidated damages provision.

53.     Reddy likewise agreed to abide by Plaintiffs' company policies, including those concerning the protection of Plaintiffs' confidential information and trade secrets and computer usage.

54.     In addition to his contractual obligations, Reddy also owes Plaintiffs a duty of loyalty and a fiduciary duty during the term of his employment not to act contrary to the interests of Plaintiffs and thereafter not to use or disclose Plaintiffs' confidential and proprietary information and/or trade secrets.

55.     Reddy is obligated not to use or disclose Plaintiffs' trade secrets and confidential and proprietary information under the terms of his Covenant Agreements and pursuant to New Jersey common and statutory law.

## DEFENDANTS ENGAGED IN COMPETITIVE ACTIVITIES WHILE REDDY WAS IN PLAINTIFFS' EMPLOY

56.     Shortly after his hiring, Reddy engaged in willful misconduct that were intended to undermine and harm Atlas Systems, steal its clients and goodwill, and cause confusion in the industry.

57.     Approximately two months after his hiring, without involvement of Plaintiffs, Reddy created a secret business entity under the name "Atlas Hana, Inc." in Florida on December 17, 2015, in contravention of Reddy's contractual and other obligations

58.     Reddy's Hana Inc. business name is virtually identical to Plaintiffs' business name of Hana LLC.

59.     On December 25, 2015 while employed by Plaintiffs, Reddy secretly and without authorization from Plaintiffs created the domain name www.Atlashanainfo.com.

95196282

60.     Reddy's   www.atlashanainfo.com   is   confusingly   similar   to   Plaintiff's www.atlashana.com domain name.

61.     Reddy thereafter used the www.atlashanainfo.com domain name and associated e-mail account to send and receive correspondence with Plaintiff Atlas Systems' clients and prospective clients without the knowledge and consent of Plaintiffs.   Reddy would often utilize both his official atlashana.com e-mail and atlashanainfo.com e-mail address when corresponding with Plaintiffs' clients and prospective clients (the "**Competitive Business E-Mail Address**").

62.     Reddy used this secret and intentionally misleading Competitive Business E-Mail Address to mislead Plaintiffs' clients and prospective clients and to divert such business to his secret competing business, Hana Inc.

63.     On multiple occasions during the course of his employment with Plaintiffs, Reddy sent confidential information belonging to Plaintiffs to private e-mail addresses and copied the Competitive Business E-Mail Address on correspondences with Plaintiffs' customers and prospective customers, in violation of his contractual obligation, his duty of loyalty, and copyright, trademark, and trade secret law and other laws.

64.     On March 3, 2016, Reddy disclosed a confidential Hana Migration proposal to third parties, including an employee/consultant of Reddy's unrelated company Vision Soft.

65.     On March 7, 2016, Reddy misappropriated Atlas Systems property, an employee handbook,   by   forwarding   it   to   his   Competitive   Business   E-Mail   Address   at "anji.reddy@atlashanainfo.com."

95196282

66.     On March 22, 2016, Reddy enabled a personal e-mail account to send and receive his work e-mail associated with Plaintiffs, which was contrary to Atlas Systems' policy and procedure requiring the use of company e-mail for all business purposes.

67.     In March 2016, Reddy requested to be made an administrator of the Hana LLC LinkedIn page.   Once Reddy secured the administrator rights, without authorization, he changed the login credentials to his personal e-mail address.  This exclusive access allowed Reddy to change the password and usurp the Hana LLC LinkedIn page from Atlas.

68.     Reddy subsequently modified the Hana LLC LinkedIn page, without authorization, to reflect his competing business ATLAS VSOFT, without changing any of the pertinent facts about the company or the use of the Atlas Hana name in the domain and account name.

69.     Reddy likewise attempted the same conduct, without authorization, with Plaintiffs' Twitter feed.

70.     Defendants' use of the Hana LLC LinkedIn page not only exceeded Reddy's authority and was in breach of his duties to Plaintiffs, but also served to heighten the confusion and use of the nearly identical ATLAS VSOFT, especially because it continued to cite facts, details, relationships, and certifications associated only with Plaintiffs.   Defendants' actions wilfully and directly sought to cause confusion and create the impression that Plaintiffs' ATLAS SYSTEMS and ATLAS Hana and Defendants' ATLAS VSOFT were one and the same.

71.     Demonstrating the bad faith intent to trade upon Plaintiffs' goodwill, the Hana LLC LinkedIn page maintained a number of internet links to articles and materials that were actually located at and hosted on Plaintiff's website.   Thus, a visitor to Reddy's Hana LLC LinkedIn page

95196282

would see and be able to click links to read about his business, and would be redirected to Plaintiffs' website to read the text and updates.

72.    Defendants further hold ATLAS VSOFT out as being a SAP SE authorized and licensed partner, which, on information and belief, it is not.

73.    Unbeknownst to Plaintiffs, on April 11, 2016, Reddy copied the entirety of the copyright protected Atlas Systems Website and its underlying HTML code.

74.    Subsequent to the Plaintiffs' launch of the Hana LLC Website, Defendants launched their competing website at www.atlashanainfo.com changing only the company name and a *de minimus* amount of other material (the "**VSoft Website**").

75.    The VSoft Website is an infringement of Plaintiffs' Copyright in the both the Hana LLC Website and underlying code that was written specifically for Plaintiffs; it becomes apparent when comparing the source code as Defendants' site HTML code leaves in references to material hosted at www.atlassystems.com and contains the clear statement and admission that it was "mirrored from www.atlashana.com on April 11, 2016."

76.    Defendants improperly took the website content in order to impersonate Plaintiffs, steal Plaintiffs' customers, and create confusion in the industry by trading upon the goodwill in the ATLAS name and mark developed by Plaintiffs.   All of these efforts were part of a Defendants' willful, bad faith scheme.

77.    On April 29, 2016, Defendants also registered the following additional domains containing Plaintiffs' ATLAS trademark: www.atlasvsoft.com, www.atlasvosft.net, www.atlasvisionsoft.com, and www.atlasvisionsoft.in.   Defendants likewise caused your various domains to display the VSoft Website.

95196282

78.     Registration of the domain names: "ATLASVSOFT.COM"; "ATLASVISIONSOFT.COM"; "ATLASVSOFT.NET"; and "ATLASVISIONSOFT.COM" were completed while Reddy was still in the employ of Plaintiffs to facilitate Defendants' scheme and to misappropriate and improperly trade on the ATLAS name and mark and in direct violation of his Covenant Agreements and other legal obligations.

79.     Also while in Plaintiffs' employ, Defendants solicited Plaintiffs' customers and prospective customers for Reddy's competing businesses in connection with the same SAP Hana S/4 platform services in direct competition with Plaintiffs, using the confidential and proprietary information belonging to Plaintiffs as well as its employees and other resources.

80.     As part of his responsibilities for Plaintiffs, Reddy prepared proposals and capability analyses to Plaintiffs' clients and prospective clients.  These proposals were Power Point presentations that used the Atlas System uniform template (the "**Atlas Decks**").   Each Atlas Deck indicated that it was property of Plaintiffs as indicated by the following copyright designation in the bottom right-hand corner stating, for example, "Atlas Hana, LLC Copyright 2016" or "Atlas Systems Copyright 2016".

81.     By way of example, on or about February 11, 2016, Reddy misappropriated Atlas Systems property by forwarding an Atlas Deck to one of Plaintiffs' clients on behalf of Hana Inc. and not on behalf of Plaintiff Hana LLC.   The copyright designation was intentionally changed to "Atlas Hana Inc. Copyright 2016."   This Atlas Deck had information similar to that of other Atlas Decks prepared by Reddy for Plaintiffs.

82.     On or about March 11, 2016, Reddy again misappropriated Atlas Systems property by forwarding another Atlas Deck to one of Plaintiffs' clients on behalf of Atlas Hana Inc. and not

16

on behalf of Plaintiff Hana LLC.   The copyright designation was intentionally changed to "Atlas Hana Inc. Copyright 2016."   This Atlas Deck had information similar to that of other Atlas Decks prepared by Reddy for Plaintiffs.

83.     On or about March 15, 2016, Reddy again misappropriated Atlas Systems property by forwarding another Atlas Deck to one of Plaintiffs' clients on behalf of Atlas Hana Inc. and not on behalf of Plaintiff Hana LLC.   The copyright designation was intentionally changed to "Atlas Hana Inc. Copyright 2016."   This Atlas Deck had information similar to that of other Atlas Decks prepared by Reddy for Plaintiffs.

84.     Again on or about March 30, 2016, Reddy misappropriated Atlas Systems property by forwarding another Atlas Deck to one of Plaintiffs' clients on behalf of Atlas Hana Inc. and not on behalf of Plaintiff Hana LLC.   The copyright designation was intentionally changed to "Atlas Hana Inc. Copyright 2016."   This Atlas Deck had information similar to that of other Atlas Decks prepared by Reddy for Plaintiffs.

85.     The Atlas Decks included content, property, and logo developed by and owned by Plaintiffs.

86.     The Atlas Decks are confidential and proprietary.   The Atlas Decks bear a confidentiality designation that states "Strictly Private and Confidential.   No part of this document should be reproduced or distributed without the prior written permission of Atlas…."

87.     By forwarding these Atlas Decks on behalf of the competitive business Hana Inc., Defendants intentionally capitalized on the ATLAS mark and goodwill, going so far as to state that "Atlas HANA is part of Atlas Company, which has been in the IT services business the last 13 years with 500-1000 employees."   It likewise included all of the information about the

17

capabilities of Atlas Systems and its world-wide operations.   These false and misleading statements were made while knowingly seeking to engage the potential clients with Hana Inc. instead of his employer Hana LLC.

88.     Upon information and belief, Reddy, on his behalf and that of his companies, sent numerous Atlas Decks to customers and prospective customers of Plaintiffs while still employed by Plaintiffs.

89.     While still in the employ of Plaintiffs, Reddy took steps to obtain documents from Plaintiffs' partners, such as SAP SE, that he intended to use for his competitive business.

90.     In March, 2016, while in Plaintiffs employ and prior to his separation, Reddy caused SAP SE to provide him with information and other templates, which he then forwarded to those working with him at Vision Soft, including Prasad Vaddi.

91.     Reddy's actions reveal a concerted plan that was executed to misappropriate the ATLAS name and mark, its property, employees, consultants, prospects and compete with Plaintiffs in a manner not authorized by his Agreements, in breach of his common law duties, and in violation of various federal and state laws.

92.     Defendants gained knowledge regarding Atlas' operations, its property, clients, prospects, contractors, consultants, and vendors and have used this information to compete with Plaintiffs both during Reddy's term of employment and thereafter.

**REDDY'S FAILURE TO PERFORM HIS JOB RESPONSIBILITIES IN GOOD FAITH**

93.     One of Reddy's job responsibilities included the preparation of standard templates that would focus on weekly reporting on matters such as strategic items, revenue target, achievement and outlook and business plan review.

95196282

94.     Another primary responsibility included the updating of SalesForce.com on a daily basis.   Despite repeated reminders, Reddy failed to comply with updating SalesForce.com.

95.     Reddy repeatedly failed or otherwise refused to provide information requested by his superiors concerning his activities.

96.     Reddy failed or otherwise refused to provide regular weekly or any reporting on the items requested.

97.     Reddy failed or otherwise refused to provide any reporting as required even after written and verbal follow ups.

98.     Reddy represented to Atlas Systems that he had obtained permission from SAP to use the name "Hana" as part of the newly formed Hana LLC entity name, when in fact there is no record of any such authorization and SAP ultimately requested that the name ATLAS HANA not be used.

99.     While in Plaintiffs' employ, Reddy permitted those working for him to falsely state their credentials on LinkedIn and association with Atlas Systems.

100.    Upon information and belief, Reddy submitted false expense reimbursements and/or claimed reimbursements that related to his competitive activities and not those performed for Plaintiffs.

## DEFENDANTS' WRONGFUL ACTS DURING EMPLOYMENT

101.    From since at least as early as December 2015, Defendants, by and through Reddy and those acting in concert with him, engaged in actions that violated Reddy's fiduciary and contractual obligations to Plaintiffs, and thereby caused and continue to cause irreparable harm and damage to Plaintiffs, their customer relationships, and goodwill.

19

95196282

102.   These wrongful actions, include, but are not limited to:

a.   Creating and using personal e-mail and domain names similar in name to Plaintiffs to purposely cause marketplace confusion;

b.   Adopting confusingly similar business names, causing confusion and infringing on Plaintiffs' trademark rights;

c.   Taking actions while in Plaintiffs' employ that were contrary to the interests of Plaintiffs;

d.   Copying Plaintiffs' website and using the copyrighted website content and HTML code as their own thus causing confusion and infringing on Plaintiffs' copyrights;

e.   Hijacking Plaintiffs' LinkedIn and Twitter pages;

f.   Violating Reddy's non-solicitation covenant by hiring Atlas employees and consultants;

g.   Violating Reddy's non-solicitation covenant, contacting customers and prospective customers of Plaintiffs and soliciting the same services concerning SAP HANA and S/4 platforms services;

h.   Wrongfully taking and using Plaintiffs' confidential information, trade secrets and property, including but not limited to, presentations, corporate handbooks, and purchased partnerships, thus misappropriating Plaintiffs' business assets.

i.   Wrongfully accessing Plaintiffs' protected computers with the intent to defraud Plaintiffs; and

95196282

j. Wrongfully preventing Plaintiffs access to their property, including but not limited to, failing to provide the password for a company issued laptop at the time of termination despite repeated requests to do so.

## <u>TERMINATION FOR CAUSE</u>

103. Plaintiffs hired Reddy on his representations that the market for the SAP Hana and S/4 platform services was strong.

104. On April 1, 2016, Reddy advised that he wanted to resign from Plaintiffs, giving his one hundred and thirty-five (135) days' notice.   The reason he provided was a change in his prior prediction as to the marketplace readiness, stating "given the market conditions and the infrastructure (products and differentiators) required to go-to market, it would be imperative to incubate ATLAS HANA entity for a period of time and resume when the market and products are ready."

105. Reddy's representations regarding the reasons for separation appear to be pretextual and in direct contradiction to the activities and actions he took with respect to ATLAS VSOFT and VISION SOFT.

106. After indicating that he wanted to terminate the employment relationship, Reddy was asked to perform certain transition steps, including updating sales contact information and status into the SalesForce.com database and other activities.

107. Reddy refused to perform the steps requested of him and otherwise failed to perform the duties assigned to him conscientiously, and in good faith or in a reasonable manner.

108. Based on Reddy's failure to perform his duties in good faith and as required by his Covenant Agreements, Plaintiffs terminated Reddy for cause on or about May 6, 2016.

95196282

109.    On Reddy's last day of employment, Plaintiffs asked that he return company issued property, including a laptop computer.

110.    Prior to returning the laptop, and without authorization, Reddy copied the entirety of the hard drive.  Plaintiffs' have reason to believe that information and evidence was also deleted from the laptop while in Reddy's possession.

111.    When he returned the laptop computer, it was password protected.  Despite repeated requests at that time, Reddy has failed to provide the password.

112.    On May 6, 2016, Plaintiffs advised Reddy that he was terminated verbally, and attempted to provide him with a written confirmation.   Reddy refused to accept the May 6, 2016 letter, which was thereafter emailed to him along with a second request for the password to the laptop.   A password was not provided until on or about August 8, 2016.

113.    Pursuant to paragraph 9 of the Jan. 2016 Agreement, as a result of being terminated for cause, Reddy is required to reimburse Plaintiffs as liquidated damages the dollar amount of his fixed salary paid or payable for the 135-day period from his April 1, 2016 notice which totals $85,068.49.

114.    Because of the bad acts and continuous breaches of his duty of loyalty, Reddy was a faithless employee throughout the period of his employment.   As such, he should be disgorged of his salary and other benefits in excess of $125,000.

## THEFT AND USE OF PLAINTIFFS' CONFIDENTIAL INFORMATION

115.    During the course of his employment with Plaintiffs, Plaintiffs imparted and entrusted their trade secrets and confidential and proprietary information to Reddy under

95196282

22

circumstances of trust and confidence rendering it protectable even if there were no contractual obligations relative to confidential information.

116.    Throughout Reddy's employment as a senior level executive, he had access to, worked on, and/or participated in the development of extensive trade secrets, confidential and proprietary information of Plaintiffs.

117.    Through his senior level positions at Plaintiffs, Reddy had broad access to Plaintiffs' customers and the products and/or services that were provided to them by Plaintiffs. Plaintiffs provided Reddy with, facilitated the development of, and expended resources such that Reddy could develop prospective customers for HANA and S/4 platform services.

118.    As set forth in the above, Reddy agreed in Paragraph 6 of the Covenant Agreements that the names of any of Plaintiffs' customers and information concerning the business Plaintiffs, its manner or operation, its plans, processes, or other data are trade secrets and confidential.

119.    Reddy understood that customer information is specific, important, material and confidential and that the customer information substantially affects the effectiveness and success of Plaintiffs' business and its goodwill.

120.     Through his management positions with Plaintiffs, Reddy had broad access to sensitive strategic information.  He was responsible for developing and implementing strategic and tactical business plans, marketing efforts, pricing, financial results and forecasts, and customer, prospects and vendors business practices for HANA and S/4 platform services.

121.    In his roles with Plaintiffs, Reddy was exposed to, and obtained a deep and intimate knowledge of, Plaintiffs' trade secrets and confidential and proprietary information and their customer relationships.

95196282

122.     Plaintiffs' trade secrets and/or confidential and proprietary information afford them an actual and/or potential economic advantage over others in the industry and are critical to Plaintiffs' ability to fairly and successfully compete in the marketplace.

123.     Plaintiffs have expended significant effort and expense to develop their trade secrets and confidential and proprietary information.

124.     Plaintiffs take careful, affirmative steps to safeguard their trade secrets and confidential and proprietary information. Plaintiffs safeguard their confidential information and trade secrets and do so through a variety of means, including, but not limited to, through non-disclosure agreements, limited access to confidential information, security restrictions and password protections on computers and other similar safeguards.

125.     Plaintiffs' trade secrets and confidential and proprietary information cannot be learned by a competitor's observation, nor can they be duplicated from public sources.  On the contrary, Plaintiffs develop their confidential information and/or trade secrets through extraordinary effort and expense.

126.     Reddy's knowledge about Plaintiffs' trade secrets and confidential and proprietary information, if disclosed to a competitor, would provide it with an unfair advantage.

127.     The confidential and proprietary information wrongfully used and disclosed without authorization includes, but is not limited to, customer contact and sale information, the contents of Reddy's company-issued laptop computer that he wrongfully retains, and other property and knowledge about the HANA and S/4 platform services that he developed while in the employ of Plaintiffs.

95196282

128.    Upon information and belief, Defendants have used and/or will inevitably use Reddy's knowledge of Plaintiffs' confidential and proprietary information and/or trade secrets regarding Plaintiffs' business strategies and techniques to convince customers in the industry that VSoft's techniques would be more effective to accomplish the customer's goals, and thereby improperly and unfairly competing.

129.    In adopting a near identical company name to directly compete with Plaintiffs, Defendants acted intentionally to create confusion in the marketplace and divert customers and potential customers and trade upon the goodwill established by Plaintiffs' 14 years of use.

130.    Reddy's adoption of a confusingly similar and infringing trademark and trade name, along with use of the confidential and proprietary information and/or trade secrets relating to Plaintiffs' business, is intended to harm to Plaintiffs and divert business.

131.    Defendants have prepared promotional materials and brochures that replicate Plaintiffs' copyrighted website information and used these derivative materials to solicit customers and prospective customers of Plaintiffs.

132.    Defendants likewise used the same proposal format that Reddy prepared while in the employ of Plaintiffs, including, but not limited to the Atlas System Power Point presentation template.

## POST-EMPLOYMENT VIOLATIONS

133.    Since May 6, 2016, Reddy has breached and continues to breach his post-employment obligations by soliciting customers and prospective customers of Plaintiffs and soliciting and hiring employees and consultants of Plaintiffs and otherwise competing through the use of Plaintiffs' confidential and propriety information.

95196282

134. Reddy has solicited and accepted meetings with clients and prospective clients of Plaintiffs.

135. By way of example and not limitation, on June 3, 2016 Reddy accepted a meeting with an Atlas Systems prospective client with which he worked and solicited while in the employ of Plaintiffs.

136. In direct violation of the Covenant Agreements, Reddy hired Sridhar Gopinathan, who worked for a subsidiary of Atlas Systems.

137. Upon information and belief, while in the employ of Plaintiffs, Reddy solicited Arun Khurana, a consultant that worked for Plaintiffs, to work on Defendants' HANA and S/4 platform services.

138. In July 2016, Arun Khurana indicated on his LinkedIn page that he was "Eco-Partner in Atlas Vsoft."

139. Defendants' hiring of or working with Arum Khurana violates paragraph 8(f) of the Covenant Agreements.

140. Reddy's statement s that ATLAS VSOFT is knowingly false, and interferes with Plaintiffs' contractual relationship with SAP SE.   Atlas Systems paid SAP SE for the partnership, and agreed at SAP SE's request that the term "HANA" will not be used in connection with a business name.   Reddy's actions in associating ATLAS VSOFT with SAP SE and trading upon the name, goodwill and business of Atlas Systems may result in damage to Atlas Systems' relationship with SAP SE.

95196282

141.    Defendants' actions in adopting the confusingly similar name and mark ATLAS VSOFT were done with malicious and willful intent to create an association, endorsement or perceived affiliation between Plaintiffs and Defendants.

142.    Defendants' actions in adopting the confusingly similar name and mark ATLAS VSOFT were done with malicious and willful intent to directly compete with Plaintiffs for the same customers.

143.    Defendants' use of ATLAS VSOFT lessens the capacity of Plaintiffs' ATLAS trademark to identify and distinguish Plaintiffs' products and services, thereby causing harm to Plaintiffs.

144.    Defendants actions in adopting the confusingly similar name and mark ATLAS VSOFT were done to create marketplace confusion and falsely associate Defendants with Plaintiffs.

## COUNT ONE
### (Copyright Infringement)

145.    Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 144 as if fully set forth herein.

146.    Defendants copied both Plaintiffs' copyright protected Atlas Website and the underlying HTML code without consent.

147.    Upon information and belief, Defendants knowingly published and distributed copies of the copyright protected Atlas Website and the underlying HTML code in contravention of 17 U.S.C. §§ 106(1) and (3).

148.    By virtue of the foregoing conduct and acts, Defendants have egregiously, knowingly, and deliberately infringed upon Plaintiffs' copyrights by copying, publishing,

27

95196282

displaying, distributing, and/or commercially benefiting from the copyright protected Atlas Website and the underlying HTML code in violation of Plaintiffs' rights under 17 U.S.C. § 101 *et seq.*

149.    Defendants' unauthorized acts constitute willful and deliberate infringement of Plaintiffs' copyrights in violation of 17 U.S.C. § 501.

150.    By reason of all the foregoing, Plaintiffs have been irreparably damaged by Defendants' activities in the manner set forth above and will be irreparably damaged unless Defendants are enjoined from continuing to commit the aforesaid acts.  Plaintiffs have no adequate remedy at law.

151.    Defendants' infringing activities entitle Plaintiffs to recover statutory damages under 17 U.S.C. § 504, in an amount to be determined at trial.

## COUNT TWO
### (Violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq.*)

152.    Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 151 as if fully set forth herein.

153.    Plaintiffs own trade secrets related to the Atlas Systems Goods and Services, which is used throughout the United States in interstate commerce.

154.    In his roles with Plaintiffs, Reddy was exposed to, and obtained a deep and intimate knowledge of, Plaintiffs' trade secrets and confidential and proprietary information and their customer relationships.

155.    Plaintiffs' trade secrets and/or confidential and proprietary information afford them an actual and/or potential economic advantage over others in the industry and are critical to Plaintiffs' ability to fairly and successfully compete in the marketplace.

95196282

156.    Plaintiffs have expended significant effort and expense to develop their trade secrets and confidential and proprietary information.

157.    Plaintiffs take careful, affirmative steps to safeguard their trade secrets and confidential and proprietary information through a variety of means, including, but not limited to, through non-disclosure agreements, limited access to confidential information, security restrictions and password protections on computers and other similar safeguards.

158.    Plaintiffs' trade secrets and confidential and proprietary information cannot be learned by a competitor's observation, nor can they be duplicated from public sources.  On the contrary, Plaintiffs develop their confidential information and/or trade secrets through extraordinary effort and expense.

159.    Reddy has deep and intimate knowledge about Plaintiffs' trade secrets and confidential and proprietary information that, if disclosed to a competitor, would provide it with an unfair advantage.

160.    The confidential and proprietary information wrongfully used and disclosed without authorization includes, but is not limited to, customer contact and sales information, the contents of his company-issued laptop computer that he wrongfully retains, and other property and knowledge about the HANA and S/4 platform services that he developed while in the employ of Plaintiffs.

161.    Reddy acquired Plaintiffs' confidential and proprietary information and/or trade secrets through improper means by breaching his duty to maintain secrecy.

162.    Upon information and belief, Defendants have used and/or will inevitably use Reddy's knowledge of Plaintiffs' confidential and proprietary information and/or trade secrets

95196282

regarding Plaintiffs' business strategies and techniques to convince customers in the industry that VSoft's techniques would be more effective to accomplish the customer's goals, and thereby improperly and unfairly competing.

163.     By virtue of the foregoing conduct and acts, Defendants have misappropriated Plaintiffs' confidential and proprietary information and/or trade secrets in violation of Plaintiffs' rights under 18 U.S.C. § 1836 *et seq.*

164.     By reason of all the foregoing, Plaintiffs have been irreparably damaged by Defendants' activities in the manner set forth above and will be irreparably damaged unless Defendants are enjoined from continuing to commit the aforesaid acts.   Plaintiffs have no adequate remedy at law.

## <u>COUNT THREE</u>
### (Violation of the Federal Computer Fraud and Abuse Act)

165.     Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 164 as if fully set forth herein.

166.     The CFAA permits any person who suffers damage or loss by reason of any activity prohibited by the CFAA to bring a civil action for damages and injunctive relief.

167.     Reddy accessed Plaintiffs' protected computers.

168.     Through Reddy's access, Defendants obtained confidential and/or proprietary information and trade secrets of Plaintiffs.

169.     Reddy's access exceeded the authorization granted by Plaintiffs.

170.     Reddy's access, upon information and belief, was done so knowingly with the intent to defraud.

30

95196282

171.    Reddy's access furthered, upon information and belief, Defendants' intent to defraud Plaintiffs.

172.    As a direct and proximate result of Defendants' conduct, Plaintiffs have been and continue to be injured in their business and property, in an amount of not less than $5,000.00.

## COUNT FOUR
### (Trademark Infringement in Violation of N.J.S.A. § 56:3-13.1 *et seq.*)

173.    Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 172 as if fully set forth herein.

174.    Plaintiffs are the owner of the trademark ATLAS for technology goods and services.

175.    Plaintiffs have used the ATLAS trademark for technology goods and services and not abandoned the mark since a date prior to any date on which Defendants may rely.

176.    Defendants' ATLAS VSOFT trademark is similar to Plaintiffs' ATLAS trademark in appearance, sound, and in commercial impression.

177.    Defendants' ATLAS VSOFT branded goods and services are related to Plaintiffs' goods and services offered in connection with its ATLAS trademark.

178.    Upon information and belief, Defendants advertise and sell their ATLAS VSOFT goods and services in the same channels of trade as Plaintiffs.

179.    As discussed above, Defendants' activities constitute use of an identical imitation of Plaintiffs' mark in connection with the sale of goods and services that is likely to cause confusion or mistake or to deceive as to the source of origin of the services in violation of N.J.S.A. § 56:3-13.16.

95196282

180.     Defendants' acts of trademark infringement have caused Plaintiffs to sustain damage, loss, and injury, in an amount to be determined at the time of trial.

181.     Defendants have engaged and continue to engage in this activity knowingly and willfully, so as to justify assessment of treble damages against them, attorneys' fees, and court costs.

182.     Defendants' acts of trademark infringement, unless enjoined by this Court, will continue to cause Plaintiffs to sustain irreparable damage, loss, and injury, for which Plaintiffs have no adequate remedy at law.

### COUNT FIVE
**(Misappropriation of Plaintiffs' Confidential Information in Violation of New Jersey's Trade Secret Act N.J.S.A. 56:15-1 *et seq.*)**

183.     Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 182 as if fully set forth herein.

184.     Plaintiffs' confidential information as described above constitutes trade secrets within the meaning of the New Jersey Uniform Trade Secrets Act, N.J.S.A. 56:15-1 *et seq.* (the "NJUTSA").

185.     Plaintiffs own valuable and secret information, including, but limited to, Plaintiffs' confidential information as described above that derives independent economic value, actual, or potential, from not being generally known, and not being readily ascertainable by proper means, by others that give Plaintiffs actual and potential economic advantage over others.

186.     Plaintiffs' confidential and proprietary information, including, but not limited to, the trade secrets, confidential and/or proprietary information, is vital to Plaintiffs' ability to fairly and successfully compete.

95196282

187.    Plaintiffs have expended significant effort and expense to develop Plaintiffs' confidential information and furnished the information to Reddy in confidence.

188.    Plaintiffs take careful, affirmative steps to safeguard their trade secrets and confidential and proprietary information. Plaintiffs safeguard their confidential information and trade secrets and do so through a variety of means, including, but not limited to, through non-disclosure agreements, limited access to confidential information, security restrictions and password protections on computers and other similar safeguards.

189.    By the aforementioned conduct set forth above, Defendants misappropriated Plaintiffs' confidential information through improper means in violation of the NJUTSA.

190.    Defendants acquired trade secrets belonging to Plaintiffs through improper means in violation on N.J.S.A. 56:15-2(1).

191.    Defendants used trade secrets belonging to Plaintiffs without the consent of Plaintiffs in violation on N.J.S.A. 56:15-2(2).

192.    Defendants disclosed trade secrets belong to Plaintiffs, upon information and belief, to third parties.

193.    Defendants' disclosure, retention, use, and possession of Plaintiffs' confidential information constitute a violation of the NJUTSA.

194.    It is inevitable that Reddy will use and/or disclose to third parties the trade secrets and confidential information of Plaintiffs.

195.    As a direct and proximate result of Defendants' conduct, Plaintiffs have been and continue to be injured in their business and property.

95196282

196.    Plaintiffs seek an injunction against Defendants based upon the actual and threatened misappropriation pursuant to N.J.S.A. 56:15-3a.

197.    Pursuant to N.J.S.A. 56:15-3c, Plaintiffs seek the return and destruction of all copies of their confidential information and other affirmative acts necessary to protect and preserve their valuable rights.

198.    As a result of Defendants' willful and malicious conduct, Plaintiffs are entitled to recover statutory damages, including, but not limited to, punitive damages to the extent permitted by to N.J.S.A. 56:15-4b.

199.    As a result of the Defendants' willful and malicious conduct, Plaintiffs seek attorneys' fees and costs, including a reasonable sum to cover the services of expert witnesses including forensic experts, to the extent permitted by N.J.S.A. 56:15-4b.

## COUNT SIX
### (Trademark Infringement and Unfair Competition under Federal Law)

200.    Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 199 as if fully set forth herein.

201.    Defendants' unlawful and improper actions as set forth above are likely to:   cause confusion as to the source, sponsorship, or legitimacy of the services sold by Defendants; misappropriate and trade upon the reputation and goodwill of Plaintiffs in the ATLAS name and mark, thereby injuring that reputation and goodwill; and unjustly divert from Plaintiffs to Defendants the benefits arising therefrom.

202.    Defendants' unlawful activities constitute trademark infringement, unfair competition, false advertising, and misappropriation as to the source of the goods and services or

95196282

the affiliation, connection or association of Defendants with Plaintiffs in violation of 15 U.S.C. § 1125 (a), Section 43(a) of the Lanham Act.

203.    Defendants' acts of trademark infringement, unfair competition, and misappropriation have caused Plaintiffs to sustain damage, loss, and injury, in an amount to be determined at the time of trial.

204.    Defendants have engaged and continue to engage in this activity knowingly and willfully, so as to justify the assessment of increased and punitive damages against them, in an amount to be determined at the time of trial.

205.    Defendants' acts of trademark infringement, unfair competition, and misappropriation, unless enjoined by this Court, will continue to cause Plaintiffs to sustain irreparable damage, loss and injury, for which Plaintiffs have no adequate remedy at law.

## COUNT SEVEN
**(Breach of the Contract against Reddy)**

206.    Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 205 as if fully set forth herein.

207.    By virtue of the conduct described above, Reddy has breached and continues to breach the Covenant Agreements.

208.    As a direct and proximate result of his breach, Plaintiffs have been and continue to be injured in their business and property.

## COUNT EIGHT
**(Breach of Implied Covenant of Good Faith and Fair Dealing Against Reddy)**

209.    Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 208 as if fully set forth herein.

95196282

210.     Reddy is bound by the covenant of good faith and fair dealing implied by law in the Covenant Agreements.

211.     By virtue of the conduct described above, Reddy has breached and continues to breach the covenant of good faith and fair dealing implied in the Covenant Agreements.

212.     As a direct and proximate result of his breach of the implied covenant of good faith and fair dealing, Plaintiffs have been and continue to be injured in their business and property.

### COUNT NINE
**(Breach of Duty of Loyalty Against Reddy)**

213.     Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 212 as if fully set forth herein.

214.     Reddy has breached and/or has threatened to breach his duty of loyalty by, among other things, wrongfully using confidential and/or proprietary information and trade secrets belonging to Plaintiffs, breaching the Covenant Agreements, downloading and/or copying documents without authorization, and otherwise acting adversely to Plaintiffs' interests.

215.     As a direct and proximate result of Reddy's breaches of his duty of loyalty, Plaintiffs have been and continue to be injured in their business and property.

### COUNT TEN
**(Breach of Fiduciary Duty Against Reddy)**

216.     Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 215 as if fully set forth herein.

217.     As Executive Vice President – SAP Solutions and Chief Executive Officer, Reddy owed a fiduciary duty to Plaintiffs to act with the highest good faith and fidelity and to act fairly and without self-dealing.

36

95196282

218.    Upon information and belief, Reddy breached his fiduciary duty by, among other things, wrongfully using confidential and/or proprietary information and/or trade secrets belonging to Plaintiffs, breaching the Covenant Agreements, and otherwise acting adversely to Plaintiffs' interests.

219.    As a direct and proximate result of Reddy's breaches of his fiduciary duty, Plaintiffs have been and continue to be injured in their business and property.

**COUNT ELEVEN**
**(Common Law Misappropriation and Wrongful Use and Disclosure**
**of Plaintiffs' Confidential Information)**

220.    Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 219 as if fully set forth herein.

221.    Plaintiffs imparted to Reddy their confidential information with the understanding and expectation set forth in agreements that Reddy would not disclose or use that information other than for the benefit of Plaintiffs.

222.    Plaintiffs' confidential information constitutes proprietary information that is protected from disclosure under the common law of New Jersey.

223.    Reddy is obligated not to use or disclose Plaintiffs' confidential information under the terms of his Covenant Agreements, and pursuant to New Jersey common law.

224.    Upon information and belief, Reddy has wrongfully used and/or disclosed Plaintiffs' confidential information for his benefit and that of Defendants to the detriment of Plaintiffs.

225.    The confidential information has been and/or will be used by competitors to the detriment of Plaintiffs.

95196282

226.     By virtue of the aforementioned conduct, Defendants have wrongfully misappropriated Plaintiffs' confidential information.

227.     It is inevitable that Reddy will use and/or disclose to third parties the trade secrets and confidential information of Plaintiffs.

228.     As a direct and proximate cause of Defendants' wrongful misappropriation, Plaintiffs have been and continue to be injured in their business and property.

## COUNT TWELVE
### (Conversion)

229.     Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 228 as if fully set forth herein.

230.      The confidential and/or proprietary information and trade secrets belong to Plaintiffs.

231.     Reddy has deprived Plaintiffs of their property, including, but not limited to, Plaintiffs' confidential information and/or other proprietary information and trade secrets.

232.     Defendants, upon information and belief, knowingly misappropriated the property of Plaintiffs' without authorization or justification.

233.     Reddy's conduct was not authorized by Plaintiffs.

234.     As a direct and proximate result of Defendants' conduct, Plaintiffs have been and continue to be injured in their business and property.

**WHEREFORE**, Plaintiffs Atlas Systems, Inc. and Atlas Hana, LLC demand judgment against Defendants as follows:

1.   Granting a preliminary and permanent injunction:

95196282

a.      Restraining and enjoining Defendant from using the "ATLAS" name and mark (however spelled, whether capitalized, abbreviated, singular or plural, printed or stylized, whether used alone or in combination with any word or words, and whether used in caption, text, orally or otherwise), or any other reproduction, counterfeit, copy, colorable imitation or confusingly similar variation of the "ATLAS" name and mark: (1) as a trade name, trademark, service mark, brand name, domain name, business or commercial designation; (2) as the name of any technology goods and service; (3) in operating, maintaining or using a web site or domain name that incorporates the infringing ATLAS marks on the Internet, or other Internet uses; or (4) in any other manner suggesting in any way that Defendants and/or its activities, services or products originate from, are affiliated with, or are sponsored, authorized, approved or sanctioned by Plaintiffs, or that Plaintiffs and/or its activities, services or products are affiliated in any way with Defendants;

b.      Restraining and enjoining Defendants from using any other mark, term, slogan, tag line, or phrase which suggests or tends to suggest in any way that Defendants and/or its activities or services originate from, are affiliated with, or are sponsored, authorized, licensed, approved or sanctioned by Plaintiffs, or that Plaintiffs or its services or activities are affiliated in any way with Defendants;

c.      Restraining and enjoining Defendants from using in connection with any goods or services, any false or deceptive designation, description or representation, whether by words or symbols, which suggests or implies any relationship with Plaintiffs, or gives Defendants an unfair competitive advantage in the marketplace, or constitutes false advertising;

39

95196282

d.	Restraining and enjoining Defendants from using or otherwise infringing Plaintiffs' copyright protected website and HTML code in any manner whatsoever;

e.	Compelling Defendants to return to Plaintiffs all their property including, but not limited to, all documents and other materials in their possession and/or control which contain confidential and/or proprietary information and/or trade secrets of Plaintiffs;

f.	Enjoining and restraining Defendants and their respective agents, servants, employees and those acting in concert with them from using, or disclosing to any person or entity any confidential information, trade secrets and/or proprietary information of Plaintiffs, their customers/prospective customers, or business, and/or the allegations of contained in this litigation;

g.	Enjoining and restraining Defendants and his/its respective agents, servants, employees and those acting in concert with him/it from accessing (prior to inspection), altering, deleting, destroying, and/or otherwise removing any non-privileged information or data from any computer(s), computer network(s), server(s), and/or any other storage device(s), electronic or otherwise, and/or email folder(s) and/or account(s) in any and all account location(s), that are in Defendants' possession, custody or control and that relate in any way to Plaintiffs, the business or potential business of Plaintiffs and/or any communication initiated and/or received by Reddy during his employment with Plaintiffs that refer in any way to Plaintiffs' business, and/or the allegations of contained in this Litigation;

h.	Compelling Reddy to identify all email address(es) and password(s) currently used by them and/or those used in the past year and to permit and assist for inspection and copying any and all email file(s) and/or folder(s) on any and all account locations;

40

95196282

        i.        Compelling Reddy to immediately retain and cause not to be automatically deleted, any and all emails on any and all account locations, including, but not limited to, any and all web-based email accounts;

        j.        Enjoining and restraining Reddy and his respective agents, servants, employees and those acting in concert with him for a period required by the Court to remedy harm based on Defendants' wrongful conduct, from directly or indirectly:

        i.    Contacting, calling upon, soliciting or attempting to solicit any customers or prospective customers of Plaintiffs with whom he worked while at Plaintiffs or about which he had learned confidential information while employed with Plaintiffs; and

        ii.    Directly or indirectly interfering with the relationship of Plaintiffs with any person or entity that is or was a customer of Plaintiffs;

        k.        Enjoining and restraining Reddy from assuming or performing any duties at any other company wherein Reddy would inevitably disclose the trade secrets and/or confidential information of Plaintiffs.

        2.    Awarding the disgorgement of, among other things, salary and benefits earned and/or received by Reddy during any period of disloyalty or as a result of a violation of any other duty owed to Plaintiffs';

        3.    Awarding liquidated damages;

        4.    Awarding compensatory damages to Plaintiffs, including, but not limited to, the recovery of the profits lost by Plaintiffs or gained by Defendants and business disruption costs;

        5.    Awarding attorneys' fees and costs under N.J.S.A. 2A:38A-3 and N.J.S.A. 56:15-6;

        6.    Awarding costs of investigation and expert expenses under N.J.S.A. 2A:38A-3 and N.J.S.A. 56:15-6;

41

95196282

7.   Awarding punitive damages to the extent permitted by N.J.S.A. 56:15-4b or as otherwise permitted under common law;

8.   Awarding exemplary and punitive damages and/or Plaintiffs' attorneys' fees, Defendants' profits, or other advantages and Plaintiff's damages resulting from Defendant's wilful infringement of Plaintiffs' trademark;

9.   Awarding Plaintiffs statutory damages pursuant to 17 U.S.C. § 504;

10. Adjudging that Defendants' misconduct was done willfully and with knowledge of Plaintiffs' prior rights and awarding Plaintiffs compensatory damages, treble damages, costs, and attorneys' fees pursuant to 15 U.S.C. § 1117(a), 17 U.S.C. §§ 504, 505;

11. Awarding costs of suit; and

12. Awarding such other and further relief as the Court may deem just and proper

**DAY PITNEY LLP**
**Attorneys for Plaintiffs Atlas Systems, Inc. and**
**Atlas Hana, LLC**


By:      s/Richard H. Brown_____
                 RICHARD H. BROWN


DATED: September 1, 2016

95196282

42

**JURY TRIAL DEMAND**

Plaintiffs demand a trial by jury as to all issues so triable.

**DAY PITNEY LLP**
**Attorneys for Plaintiffs Atlas Systems, Inc. and**
**Atlas Hana, LLC**

By:    __s/Richard H. Brown_____
                RICHARD H. BROWN

DATED: September 1, 2016

95196282