UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **ATLAS SYSTEMS, INC., et al.,** | Civil Action No. 16-5381 (MAS) |
| **Plaintiffs,** | |
| v. | REPORT AND RECOMMENDATION |
| **ANJI REDDY, et al.,** | |
| **Defendants.** | |

**BONGIOVANNI, Magistrate Judge**

Currently pending before the Court are Motions to Enforce Settlement and Sanctions filed by both Plaintiffs Atlas Systems, Inc. and Atlas Hana, LLC (collectively "Plaintiffs") and Defendants Anji Reddy ("Defendant Reddy"), Atlas Hana, Inc., and Vision Soft Consulting Inc. ("Vision Soft") (collectively "Defendants"). (Docket Entry Nos. 43 and 44). The Court has fully reviewed the submissions in support of an in opposition to both motions and considers same without oral argument pursuant to L.Civ.R. 78.1(b). For the reasons that follow, it is respectfully recommended that Plaintiffs' Motion to Enforce the Settlement of September 11, 2017 and for Sanctions against Defendants be GRANTED in part and Defendants' Motion to Enforce the Settlement of October 13, 2017 and for Sanctions against Plaintiffs be DENIED.

### I.  BACKGROUND AND PROCEDURAL HISTORY

The parties are familiar with the facts of the case, therefore, they are not restated at length herein. On September 1, 2016, Plaintiffs filed a Complaint against Defendants alleging Copyright Infringement, violation of the Defend Trade Secrets Act, violation of the Federal

1

Computer Fraud and Abuse Act, Trademark Infringement in Violation of N.J.S.A. §56:3-13.1 *et seq.*, Misappropriation of Plaintiffs' Confidential Information in violation of New Jersey's Trade Secret Act, Trademark Infringement and Unfair Competition under Federal Law, Breach of Contract against Anji Reddy, Breach of Implied Covenant of Good Faith and Fair Dealing against Anji Reddy, Breach of Duty of Loyalty against Anji Reddy, Breach of Fiduciary Duty against Anji Reddy, Common Law Misappropriation and Wrongful Use and Disclosure of Plaintiffs' Confidential Information, and Conversion. (*See generally,* Pls.' Complaint; Docket Entry No. 1*)*. Defendants filed an Answer, Counterclaim and Third Party Complaint on October 7, 2016. (Docket Entry No. 9). A motion to dismiss Defendants' Counterclaim and Third Party Complaint was filed by Plaintiffs and Third Party Defendant, Kanugopula Chalamala, on October 28, 2016. (Docket Entry No. 12). On March 31, 2017, the parties entered a consent order dismissing all claims against Mr. Chalamala and all but one claim against Plaintiffs. (Docket Entry No. 28).

On May 11, 2017, the parties agreed to settle this case. As a result of their representation that the matter was settled, the Court entered a 60-Day Order terminating the matter pending the consummation of a signed settlement agreement. (Docket Entry No. 35). The parties, however, were unable to reach an agreement on the settlement language within the original 60-day period. Consequently, the Court extended same to August 25, 2017. (*See* Minute Entry of 7/31/2017). When it became apparent that an agreement on the settlement language would not be reached, Plaintiffs asked the Court for permission to file a motion to enforce the May 11, 2017 settlement, while Defendants asked the Court for an in-person conference. The Court granted Defendants' request and scheduled a follow-up in person

2

settlement conference for September 11, 2017. (*See* Letter Order of 8/21/2017; docket Entry No. 37). The Court further extended the 60-day administrative termination deadline.

On September 11, 2017, the parties attended the follow-up settlement conference with the Court. During same, a settlement was reached and the material terms of the parties' agreement were placed on the record. Additionally, the parties agreed to the language of the settlement documents and placed that language on the record. As a result, the Court extended the 60-day termination deadline to September 21, 2017 so that the settlement papers could be signed. (*See* Minute Entry of 9/11/2017).

Despite the terms of the settlement and the language of the settlement documents being placed on the record, Defendants refused to sign the settlement papers. In an effort to afford the parties an opportunity to resolve the issues, the Court extended the 60-day administrative deadline again on multiple occasions. (*See* Reset of Administrative Termination of 9/21/2017 and 9/29/2017; Letter Order of 10/16/2017 (Docket Entry No. 41); Letter Order of 10/19/2017 (Docket Entry No. 42)). In its last Letter Order extending the 60-day administrative termination deadline, the Court instructed the parties that, if the settlement documents were not finalized by November 9, 2017, any motion to enforce a settlement must be filed at that time. (*See* Letter Order of 10/19/2017; Docket Entry No. 42). Unfortunately, the settlement papers were not signed and the parties filed their competing motions to enforce on November 9, 2017 in compliance with the Court's Order. (*See* Docket Entry Nos. 43 and 44).

Through their motion, Plaintiffs seeking an Order compelling Defendants to execute documents reflecting the settlement agreement made by the parties on September 11, 2017. Plaintiffs state that "since September 11, Defendants proposed new material terms that were

3

never previously discussed and were inconsistent with what was agreed to on September 11, suggested other language that deviated from the language that was agreed to on September 11, and more than a month after September 11 revealed that a material representation made by [Defendant] Reddy had been false all along." (Pls. Br. in Supp. of Mot. at 1). Specifically, Plaintiffs state that "Defendants proposed to: go back on their agreement to abandon a trademark registration containing the name Atlas, modify their representations that Defendant Vision Soft and its affiliates had not hired any of Plaintiffs' former employees (except Mr. Reddy), and impose obligations on Plaintiffs that had never been discussed before September 25, 2017." (*Id.* at 8-9). Plaintiffs state that Defendants proposed including a non-disparagement clause that had never been previously discussed. (Pls. Br. in Opp'n at 6). Additionally, Plaintiffs state that Defendants sought to insert unnecessary language in the preamble of the Consent Judgment. (*Id.* at 7).

Plaintiffs state that they attempted to work with Defendants' counsel to reach an agreement but that Defendants "refused to execute documents memorializing what was actually agreed to on the record" on September 11, 2017. (Pls. Br. in Supp. of Mot. at 1-2). In light of Defendants' refusal to execute documents reflecting the agreement reached on the record on September 11, 2017, Plaintiffs, through their motion, ask the Court to enforce said agreement. In addition, Plaintiffs request that the Court award them attorneys' fees and costs incurred as a result of having to make their motion to enforce as well as interest on the November 1, 2017 payment of $50,000 that has not been paid by Defendants. (*Id.* at 2).

Plaintiffs argue that courts should "enforce the agreed-upon terms when the terms of a settlement agreement are plain and the intent of the parties to be bound is clear." (*Id.* at 11

4

(citing *Hagrish v. Olsen*, 254 N.J. Super. 133, 138 (App. Div. 1992); *Bistricer v Bistricer*, 231 N.J. Super. 143, 147 (Ch. Div. 1987))). Plaintiffs note that a motion to enforce a settlement is evaluated under the same standard as a motion for summary judgment because the central issue is whether there is any disputed issue of material fact as to the validity of the settlement agreement. (*Id.* at 12 (citing *Coleman Enters. Co. v. Scottsdale Ins. Co.*, No. 14-cv-07533, 2017 WL 1224545 at *1-2 (D.N.J. Mar. 31, 2017))). Plaintiffs state that there was no dispute over the material terms agreed to on September 11, 2017. (*Id.*) Indeed, Plaintiffs note that Defendant Reddy agreed to those terms five times on the record. (*Id.*)

Defendants oppose Plaintiffs' motion to enforce and pursue their own motion to enforce the parties' settlement agreement reached on October 13, 2017. Defendants state that after the September 11, 2017 settlement conference, the parties engaged in a high volume of email correspondence and telephone calls which culminated in the October 13, 2017 settlement agreement. (Defs. Br. in Supp. of Mot. at 1). Defendants argue that there was a "meeting of the minds" and mutual agreement upon the terms as drafted in the settlement documents as of October 13, 2017. (*Id.* at 2). Defendants argue that Plaintiffs acted in bad faith in rejecting and reneging on the settlement reached on October 13, 2017. (*Id.* at 3). Given Plaintiffs' bad faith, Defendants contend they should be awarded their attorneys' fees and costs. (*Id.*)

Defendants rely on *Slaughter v. Conway's Dept. Store* and *Dep't of Pub. Advocate v. N.J. Bd. of Pub. Utils.* for the proposition that "If parties have, in fact, agreed to the terms of a settlement, 'second thoughts are entitled to absolutely no weight as against our policy in favor of settlement.'" (*Id.* at 14 (quoting *Slaughter*, 2010 WL 2991017, at *5 (N.J. App. Div. July 29, 2010) (citing *Dep't of Pub. Advocate*, 206 N.J. Super. 523, 530 (App. Div. 1985)))).

5

Defendants note that "[a] litigant's offer of settlement which has been accepted by an adversary creates a binding and enforceable contract." (*Id.* at 16 (citing *Nolan v. Lee Ho*, 120 N.J. 465, 472 (1995); *Hagrish*, 254 N.J. Super. at 137-138)). Defendants argue that a binding contract was created on October 13, 2017, and that that agreement should be enforced by the Court. (*Id.*). Defendants note that it is especially important that the Court enforce the portion of the October 13, 2017 settlement agreement regarding the Affidavit of Defendant Vision Soft, because without the carve out for Sridhar Gopinathan ("Mr. Gopinathan"), no corporate representative of the company can sign the Affidavit without committing perjury. (*Id.* at 23). Further, Defendants assert that they are entitled to attorneys' fees and costs because "Plaintiffs' refusal to sign the Consent Judgment, after the parties had worked diligently to come to an agreement on all of the terms contained within the settlement documents, for over a month, was baseless, unjustified, and completely contrary to the good faith with which the parties had been negotiating the terms of the settlement and related documents since May 2017." (*Id.* at 25).

Contrary to Defendants' assertion that there was a "meeting of the minds" regarding the October 13, 2017 settlement agreement, Plaintiffs contend that Defendants' October 13, 2017 proposal "came after previous proposals by Defendants containing demands to insert language or provisions that had not been agreed to by the parties in in the actual agreement reached in Court on September 11, 2017." (Pls. Br. in Opp'n at 1). Plaintiffs assert that they repeatedly rejected those proposals. (*Id.*). Plaintiffs note that in October 13, 2017 emails from Defendants to Plaintiffs, Defendants "<u>ask</u> whether the draft documents provided on that day were agreeable to Plaintiffs (they were not), thus admitting that" no agreement had been reached. (*Id.* at 2). Of particular concern to Plaintiffs was Defendants' disclosure that they had been insisting on

6

striking the statement that no Vision Soft subsidiary had hired a former employee of Plaintiffs (except Defendant Reddy) because contrary to earlier representations, Vision Soft had hired a former Atlas Systems employee. (*Id.* at 9). Plaintiffs state that this disclosure "called into question the accuracy of other representations by Mr. Reddy, and created a concern that negotiating the language with Defendants would never end, because they would keep springing new provisions on Plaintiffs." (*Id.*). Finally, Plaintiffs note that "Defendants do not identify a single provision in what Plaintiffs submitted with their motion that deviates from what was agreed to on September 11, 2017." (Pls. Reply Brief at 7). Plaintiffs argue that the fact they discussed various proposals and counterproposals with Defendants "in the aftermath of September 11 does not change the fact that the only agreement reached was the one on September 11." (*Id.*) Plaintiffs seek to enforce that agreement with one change: Plaintiffs are willing to relent on the Vision Soft Affidavit as "they will not insist that Mr. Reddy sign a knowingly false affidavit, even though he agreed to this language on September 11, 2017, while under oath." (*Id.*)

Defendants, however, contend that "[i]t is disingenuous of Plaintiffs to behave as if they were unaware of Sridhar Gopinathan and his employment relationships related to the parties in this matter." (Defs. Reply Brief at 1). Defendants state that Plaintiffs included Mr. Gopinathan in the Complaint and that Mr. Chalamala, Plaintiffs' owner, filed a complaint against Mr. Gopinathan with the Cyberabad Metropolitan Police's cybercrimes unit in India in connection with his hiring by Defendant Vision Soft's subsidiary. (*Id.*). Defendants accuse Plaintiffs of knowingly introducing language into the Vision Soft Affidavit to induce Defendant Vision Soft

7

to commit perjury. (*Id.* at 2). As such, Defendants ask the Court to grant their motion to enforce as well as their request for attorneys' fees and costs.

## II. ANALYSIS

A settlement agreement is a type of contract. *See Mortellite v. Novartis Crop Prot., Inc.*, 460 F.3d 483, 492 (3d Cir. 2006) (citing *Borough of Haledon v. Borough of N. Haledon*, 358 N.J. super. 289, 305 (App. div. 2003)). Federal courts look to state contract law when determining whether an enforceable settlement agreement has been reached. *See Id.*; *Excelsior Ins. Co. v. Pennsbury Pain Ctr.*, 975 F.Supp. 342, 348-49 (D.N.J. 1996) (holding that "state law governs the construction and enforcement of settlement agreements in federal court.")

Under New Jersey state law, "[a]n agreement to settle a lawsuit is a contract which, like all contracts, may be freely entered into and which a court, absent a demonstration of 'fraud or other compelling circumstances,' should honor and enforce as it does other contracts." *Pascarella v. Bruck*, 190 N.J. Super. 118, 124-25 (App. Div. 1983) (citations omitted). Indeed, in New Jersey, there is a strong public policy favoring settlements. *Nolan*, 120 N.J. at 472. Consequently, courts "strain to give effect to the terms of a settlement whenever possible." *Dep't of Pub. Advocate*, 206 N.J. Super. at 528.

"'[P]arties may orally, by informal memorandum, or by both agree upon all the essential terms of the contract and effectively bind themselves thereon, if that is their intention, even though they contemplate the execution later of a formal document to memorialize their undertaking.'" *Bistricer*, 231 N.J. Super. at 147 (quoting *Pascarella*, 190 N.J. Super. at 126). "'So long as the basic essentials are sufficiently definite, any gaps left by the parties should not frustrate their intention to be bound." *Id.* at 148 (quoting *Berg Agency v. Sleepworld*, 136 N.J.

Super. 369, 376 (App. Div. 1975)). Thus, while courts will not enforce "[a] settlement . . . 'where there appears to have been an absence of mutuality of accord between the parties or their attorneys in some substantial particulars, or the stipulated agreement is incomplete in some of its material and essential terms[,]'" *Id*. at 147 (quoting *Kupper v. Barger*, 33 N.J. Super. 491, 494 (App Div. 1955)), "'a contract is no less a contract because some preferable clauses may be omitted either deliberately or by neglect...'" *Id*. at 148 (quoting *Berg Agency*, 136 N.J. Super. at 376). "Indeed, as long as those essential terms are agreed to, 'the settlement will be enforced notwithstanding the fact that a writing does not materialize because a party later reneges.'" *McDonnell v. Engine Distributors*, Civil Action No. 03-1999, 2007 WL 2814628, a *3 (D.N.J. Sept. 24, 2007) (quoting *Lahue v. Pio Costa*, 263 N.J. Super. 575, 596 (App. Div. 1993)).

Based on these principles, it is clear that the parties in this case reached an enforceable settlement agreement on September 11, 2017. After spending over four hours with the parties resurrecting the settlement reached in May, the Court went on the record with the parties under oath to confirm that the matter was settled and to place the essential terms of the settlement on the record. Specifically, the parties agreed that the consent order with restraints and stipulation of dismissal that was circulated between them in July 2017 would be turned into a consent judgment with the following additions:

(1) Defendants would be jointly and severally liable for the payment of $100,000 to Plaintiffs according to the following schedule: (a) $50,000 due on or before November 1, 2017; (b) $25,000 due on or before April 1, 2018; and (c) $25,000 due on or before June 1, 2018 (Tr. of Proceedings of 9/11/2017 5:11-14; 7:2-12);

9

(2) While Johnson & Johnson ("J&J") had been listed on Exhibit 1 (the prospective client list), Vision Soft, was permitted to continue to provide the types of services previously invoiced and provided by Vision Soft or Madhu Reddy for J&J through Grom Consulting prior to October 15, 2015 for the period between May 11, 2017 and November 6, 2017 (*Id*. 5:15-6:4; 13:1-18); and

(3) For the period of time between May 11, 2017 and November 6, 2017, the only work Defendants would perform for PCF would be Legacy SAP for transition, with a maximum of 200 hours worth of work being performed in that time period and with Defendant Reddy having no contact with PCF until after November 6, 2017 (*Id*. 6:5-14; 10:20-11:2);

In addition, as part of the settlement, the parties agreed that Defendant Reddy would sign an affidavit like the one submitted on September 11, 2017 edited to include the following information:

(1) A representation regarding the value of any mortgage or loans attached to Defendant Reddy's home in New Jersey (*Id*. 10:1-6);

(2) A representation regarding Defendant's inability to obtain a home equity loan on the property in Virginia because it is a second home (*Id*. 10:7-11);

(3) A representation confirming that Defendant Reddy does not have more than $100,000 in liquid assets, including cash, money in a bank account, or other funds he can get access to (*Id*. 10:12-19); and

(4) A representation that Defendant Ready would not work directly with PCF as outlined above (*Id*. 10:20-11:2).

Further, the parties agreed that as part of the settlement, Vision Soft would submit an affidavit similar to the one submitted on September 11, 2017 edited such that the 3rd paragraph of the affidavit, which states that all documents containing any references to "ATLAS" were returned to Plaintiffs, included the opening phrase "after my reasonable investigation including interviews with current employees."   (*Id*. 17:14-18:3).

It is evident from the record of the proceedings from September 11, 2017 that both Plaintiffs and Defendants unequivocally agreed to this settlement.   For example, the following colloquy took place with Plaintiffs' representative, Venugopala Chalamala:

> Mr. Brown:   Mr. Chalamala, I have read the terms of the settlement that has been reached today, which obviously includes some documents -- or language from documents that was-- that were previously circulated.   Do you have any questions about this settlement?
>
> Mr. Chalamala:   No.
>
> Mr. Brown:   Do you understand the nature of the settlement?
>
> Mr. Chalamala:   Yes.
>
> The Court:   Okay.   And you understand that if you leave here today, and you decide you have a change of heart, you didn't like something, or you just didn't realize what it meant, that you wouldn't be able to come back in or would be hard-pressed to come back in and try to renegotiate, do you understand that?
>
> Mr. Chalamala:   Yes, Your Honor.
>
> The Court:   Okay.   And I understand Mr. Brown, Ms. Aviles, and their firm have been representing you in this matter, have you been satisfied with the representation of counsel?
>
> Mr. Chalamala:   Absolutely.
>
> The Court:   Do you have any questions?   And, again, I know we've been at it since 11 o'clock this morning, you've met with

11

> me personally with your counsel, so we've had a lot of discussions. But I want to make sure that you understand what you're agreeing to, and make sure that you don't have any questions that haven't been answered, okay?
>
> Mr. Chalamala:   I'm fine.
>
> The Court:   Okay.
>
> Mr. Chalamala:   Thank you, Your Honor.
>
> ***
>
> The Court:   So let me just finish-up with plaintiff. So, Mr. Chalamala, I know we've talked about some additional documents, I just want to make sure they're all acceptable to you.
>
> Mr. Chalamala:   Yes, Your Honor.
>
> The Court:   Okay.

(*Id*. 7:21-8:25; 21:2-8).

Similarly, the following colloquy took place with Defendants' representative, Anji Reddy:

> Ms. Chimbangu:   Mr. Reddy, have you heard and understood all the terms that counsel for the plaintiff, Richard Brown, has placed on the record before us all today?
>
> Mr. Reddy:   I understood the payment schedule, defendants' collective response for the payments; I understood Exhibit 1 with the 27 clients mentioned here; that I have a non-compete through November 6th 2017; and the two carve-outs, J&J's completely carved out, PCF Limited to Legacy SAP for transition, max 200 hours; and I will not have any contact with him.
>
> Ms. Chimbangu:   All right. And do you understand all of the terms and the nature of the settlement?
>
> Mr. Reddy:   (No verbal response).
>
> Ms. Chimbangu:   Do you -- as you've just repeated those back, do you understand –

12

Mr. Reddy: Yeah, these terms, I do understand, Your Honor.

The Court: Well, I want to make sure that you also recognize that Mr. Brown has just spent some time, as we've discussed, there are a number of other terms, provisions, not just the payments. There's the payment schedule, which is acceptable to you, that's right?

Mr. Reddy: Right, Your Honor.

The Court: Okay. And then we also talked about an affidavit that you would be producing that discusses important components, you'd make representations regarding any mortgage or loans that have been attached against your home -- your New Jersey home, right?

Mr. Reddy: That's right.

The Court: You've also agreed to make -- prepare an affidavit, and make representations regarding your inability to get a home equity loan on the Virginia property because it's a second home, correct?

Mr. Reddy: That's correct.

The Court: And also you're going to make representations that you do not have more than $100,000 in liquid assets, correct?

Mr. Reddy: In cash, Your Honor.

The Court: Or in any bank -- bank account. I mean cash is included in a bank account, or any funds such that you can get access to, okay? Yes?

Mr. Reddy: Yes.

The Court: And then the fourth has to do with the 200 hours that you are -- you have a carve-out with PCF that you will be able to have then, and will continue to be able to do work from May 11, 2017 through November 6th, 2017. And when I say "you," there's a contract between your company and PCF, but the work is not going to be done directly by you, correct?

13

Mr. Reddy:   That's correct.

The Court:   I also understand that there was a prior affidavit that had been exchanged that the parties agreed to, you're aware of that, Ms. Chimbangu, obviously, yes?

Ms. Chimbangu:   Yes, Your Honor.

The Court:   Is there any question that I need to go through those provisions with Mr. Reddy?

Mr. Reddy:   Yeah, Your Honor, I think there were a number of edits on those documents, so if we could review them on[e] more time.

\*\*\*

Ms. Chimbangu:   All right.  Mr. Reddy is fine with the language as it exists in what I believe is the latest version of the settlement agreement.

\*\*\*

The Court:   Okay.  And what else have you folks been referencing?  I know there was discussion about some prior documents that you've been exchanging.  Am I attaching anything else to this?  Do you know what you're talking about?  I don't want to have a mistake later, "Oh, I didn't read that version," and we're fighting over an "and" and an "or" in a document.

Mr. Brown:   Well, what we could do, if you want to mark these, we could mark these two documents.

Ms. Chimbangu:   Yeah, I mean there -- there's -- the latest version that was sent to my firm from Mr. Brown's firm is the one that we're working off today, which I have no reason to believe is not the most up-to-date one.

The Court:   Is there a date on that?

Ms. Chimbangu:   There is not.  I mean if -- if you want, we can enter them as exhibits so that they're preserved.

The Court:   Why are we entering two, though, if we're talking

14

about a latest version?

Ms. Chimbangu: Well, there's one of Anji Reddy, and there's one of Vision Soft.

The Court: Right.

***

The Court: Okay. Yeah, I'd rather have those at least in my file, I can just put Exhibit 2 and 3 on them.

Ms. Chimbangu: Okay. And we're just entering these for the substance of the versions that we're saying we're all working off.

The Court: Yes, because if you come --

Ms. Chimbangu: Obviously they haven't been signed yet.

The Court: If you come back to me, and you say, "I don't' think that's what I agreed to, that's not what I understood," I want to be able to have in my file what you, Mr. Reddy, have looked at that you're conceptually accepting.

Ms. Chimbangu: Right. And Mr. Reddy has read both of these, he just wants me to clarify for Your Honor that there's one provision in the Vision Soft consulting agreement, which he's signing on behalf of the company, which requires him to verify and to affirm that any and all documents that reference Atlas have been returned. And sitting here today, he just wants to make sure he has the opportunity to, again, make sure.

The Court: Right; he's not signing it.

Ms. Chimbangu: He's not signing them today.

The Court: He's agreeing to do that --

Ms. Chimbangu: He's agreeing to do it.

The Court: -- and he's going -- and he's agreeing that he will sign it once that's been done, once he has --

Ms. Chimbangu: Correct.

15

\*\*\*

The Court: So, Mr. Reddy, are you comfortable that you understand all the terms of the settlement?

Mr. Reddy: I do.

The Court: Okay. And the terms include the documents that have been submitted to me, yes?

Mr. Reddy: Yes.

The Court: And they also include what was placed on the record, which essentially deals with the additional terms to be included in your affidavit, yes?

Mr. Reddy: Yes.

The Court: As well as the payment schedule.

Mr. Reddy: Yes.

The Court: Anything that you think needs to be discussed? Anything you think that is missing, other than, again, this J&J issue, which we're reserving, hopefully, until tomorrow?

Mr. Reddy: (No verbal response).

The Court: No? Okay, you shook your head no. You're --

Mr. Reddy: No.

The Court: Okay. So you're satisfied with the terms of the settlement?

Mr. Reddy: Yes.

The Court: Okay. And Mis Chimbangu and her firm have been representing you throughout this matter. Have you been satisfied with them?

Mr. Reddy: Yes.

(*Id*. 9:3-11:11; 13:16-18; 15:18-16:15; 16:25-18:3; 21:11-22:12).

There is no doubt that both Plaintiffs and Defendants intended to settle this matter on September 11, 2017. There is likewise no doubt that both agreed to be bound by the terms made part of the record during the September 11, 2017 proceedings and that these terms represented the essential terms of their agreement. The fact that a formal signed agreement memorializing the parties' settlement never materialized is of no moment. It is clear here that the failure of the parties to execute a signed agreement results not from a lack of accord, but from Defendants having second thoughts about what they agreed to. As Defendants aptly noted in their brief in support of their motion to enforce, such "'second thoughts are entitled to absolutely no weight as against our policy in favor of settlement.'" *Slaughter*, 2010 WL 2991017, at *5 (quoting *Dep't of Pub. Advocate*, 206 N.J. Super. at 530).

The parties did not, as Defendants argue, reach a settlement on October 13, 2017. Instead, the information submitted in support of Defendants' motion trying to enforce said "settlement" indicate that far from there being an agreement, Plaintiffs took issue with several of the changes Defendants were attempting to make to the September 11, 2017 settlement. Indeed, far from evincing an agreement, Defendants' motion papers indicate that Defendants were trying to significantly alter the landscape of the settlement reached on September 11, 2017. Such buyer's remorse shall not be countenanced. The Court therefore recommends that Plaintiff's motion to enforce the September 11, 2017 settlement agreement be granted and Defendants' motion to enforce the purported October 13, 2017 settlement be denied.

Further, the Court finds that the imposition of the attorneys' fees and costs Plaintiffs incurred pursuing this motion are warranted under the circumstances of this case. The Court

17

notes that despite the "American Rule" dictating that each party to a lawsuit bears its own fees and costs, the Court may nevertheless award attorneys' fees and costs "to a successful party 'when his opponent has acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Ford v. Temple Hosp.*, 790 F.2d 342, 346 (3d Cir. 1986) (quoting *Hall v. Cole*, 412 U.S. 1, 5, 93 S.Ct. 1943, 1946, 36 L.Ed. 2d 702 (1973) (internal quotation marks omitted)). After hours of negotiation on September 11, 2017, the essential terms of the parties' settlement agreement were placed on the record and Defendant Reddy swore under oath he and Defendants understood and agreed to be bound by same. Rather than keeping this promise, Defendants reneged on their agreement and attempted to renegotiate a new and presumably better deal for them. This is unacceptable under any circumstances, but particularly troubling when the September 11, 2017 settlement conference did not represent the parties' first attempt at settlement, but instead was scheduled because the parties had informed the Court that the matter was settled 4 months earlier, but then were unable to finalize the terms of their settlement agreement.

There is simply no reason Plaintiffs should have had to have engaged in this motion practice. The terms of the parties' settlement agreement were clear as was their intent to be bound. As a result, the Court recommends that Plaintiffs' request for attorneys' fees and costs associated with filing their motion and opposing Defendants' be granted. Plaintiffs are directed to submit documentation supporting the reasonable attorneys' fees and costs incurred pursuing same within 14 days of the District Court's decision on this Report and Recommendation unless otherwise instructed. Defendants may submit any objection to the fees and costs charged within 14 days of Plaintiffs' submission.

The Court recommends against requiring Defendants to pay interest on the $50,000 payment that would have been due on November 1, 2017 since the agreement had not been formally finalized at that time. Nevertheless, the Court recommends setting a deadline by which Defendants shall pay the entire $100,000 due and owing Plaintiffs as the deadlines for all payments to be made by Defendants have passed and Defendants have yet to remit any money to Plaintiffs. The Court likewise recommends requiring Defendants to pay interest on all monies not promptly paid by that date.

### III. CONCLUSION

The Court having considered this matter pursuant to L.Civ.R. 78.1(b) and for the reasons stated above;

IT IS on this 26th day of June 2018,

RECOMMENDED that Plaintiffs' Motion to Enforce the Settlement of September 11, 2017 and for Sanctions against Defendants be GRANTED in part and Defendants' Motion to Enforce the Settlement of October 13, 2017 and for Sanctions against Plaintiffs be DENIED; and it is

ORDERED that the Clerk of the Court terminate Docket Entry Nos. 43 and 44 and activate this Report and Recommendation for the District Court's review.

s/Tonianne J. Bongiovanni
**HONORABLE TONIANNE J. BONGIOVANNI**
**UNITED STATES MAGISTRATE JUDGE**
