**JOEL D. ROSEN, Esq.**
**Windsor Business Park, Building 4B**
**186 Princeton-Hightstown Road**
**West Windsor, New Jersey 08550**
**(609) 514-1020**
JDRLAW@verizon.net
*Attorney for Defendant, VisionSoft Consulting, Inc.*

| | | |
|---|---|---|
| ATLAS SYSTEMS, INC. | : | UNITED STATES DISTRICT COURT |
| | : | DISTRICT OF NEW JERSEY |
| | : | |
| *Plaintiff* | : | CIVIL ACTION |
| | : | |
| | : | Docket No. 16-5381 (MAS) |
| | : | |
| ANJI REDDY, et al., | : | |
| | : | |
| | : | |
| | : | |
| *Defendants.* | : | |

Objection of Defendant, VisionSoft Consulting, Inc..
In Opposition to Report and Recommendation of Magistrate Judge

# TABLE OF CONTENTS

I.   BRIEF STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

II.  DISCUSSION

     A.   Plaintiff's Refusal to Sign Means the Settlement Agreement is Not Yet Binding and Enforceable. . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

     B.   Plaintiffs Have Continued to Introduce New Issues in Bad Faith. 5

          ISSUE NO. 1  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
          ISSUE NO. 2  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
          ISSUE NO. 3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
          ISSUE NO. 4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
          ISSUE NO. 5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

III. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 102

# TABLE OF AUTHORITIES

## CASES

*Nolan v. Lee Ho*, 120 N.J. 465 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Winston v. Mediafare Entertainment Corporation,* 777 F.2d 78 (2d Cir. 1985)

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

This Objection is submitted on behalf of Defendant, VisionSoft Consulting, Inc., in opposition to the Report and Recommendation of Magistrate Judge Hon, Tonianne J. Bongiovanni filed in this matter on 6/26/2018 (hereinafter "R&R"; ECF document 51).

## I.  BRIEF STATEMENT OF FACTS

The Magistrate Judge has reviewed the cross motions to enforce the settlement of September 11, 2017 and has recommended that the plaintiffs' motion be granted in part, and that sanctions against defendants be granted; and that the defendants' motion be denied.

The Magistrate Judge was deeply involved in the settlement process, and labored mightily to bring the parties to the point where a written agreement, satisfactory to the parties in all respects, could be signed.  The R&lR discloses that the parties decided to settle the case as early as May 11, 2017, at which time a 60-Day Order was entered. Thereafter, however, the parties were unable to "reach an agreement on the settlement language", R&R p.2. As recounted in the R&R, there followed numerous motions and court appearances, including in-person conferences with the Magistrate Judge, parties and counsel, and instances where the parties went on the record and affirmed their acceptance of settlement terms, including copies of multiple documents that were intended to be incorporated into

the final settlement document. The Court was especially generous with the Magistrate Judge's time and seems to have granted every single request for a continuance or for an in-person conference for the purpose of reaching the desired final form of comprehensive written agreement which both sets of parties could comfortably sign.

On September 11, 2017, the parties and their counsel participated in a lengthy in-person conference in judicial chambers, then took the witness stand (through Kanugopula Chalamala for the plaintiffs, and Anji J. Reddy for the defendants) and unreservedly accepted the then form of the settlement document on behalf of their respective camps. The proceedings of September 11, 2017 are the gold standard in this matter, the touchstone both parties profess to wish to fulfill, and the springboard for continuing conferences and motions to complete the aspects of the agreement deemed incomplete or incorrect by one set of parties or the other. R&R, p. 11. Thus far, however, as documented in the objections filed by defendant Anji Reddy, although numerous points of difference have been overcome, there remain several issues (all of them late-arising, from the plaintiff side) as to which the plaintiffs maintain obdurate, so that they refuse to sign.

**II.    DISCUSSION**:

    **A.    Plaintiff's Refusal to Sign Means the Settlement Agreement is Not Yet Binding and Enforceable.**

In the R&R, the Magistrate Judge analyzes the enforceability of the settlement agreement in its current form under the rubric of such familiar cases as *Nolan v. Lee Ho*, 120 N.J. 465 (1995), This analysis is correct and apposite as far as it goes, but there is another aspect of the instant agreement (the September 11, 2017 version plus recent additions and amendments) which needs to be understood and applied to carry out the intentions of the parties.

In the settlement process which has capped this case, it is clear that the parties have reserved the right to require that a written document be signed as the precondition for the parties to be bound and for the settlement to take effect. The consequences which flow from the presence of this element of agreement are discussed in *Winston v. Mediafare Entertainment Corporation,* 777 F.2d 78 (2d Cir. 1985), decided under New York State common law. The Second Circuit discussed at length and in detail how a court is to go about determining the time of contract formation as governed by an understanding between the settling parties that the settlement becomes effective only when the final form of document has been created and signed. The Second Circuit admonishes us to consider these factors (at p. 80-81):

3

>   (1) whether there has been an express reservation of the right not to be bound in the absence of a writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing. *** These circumstances may be shown by "oral testimony or by correspondence or other preliminary or partially complete writings." (internal citations omitted).

In the instant case, it cannot be doubted that the parties reserved the right to rely upon a fully written, fully executed agreement as defining the moment when the settlement is to go into effect. Otherwise, if the agreement were immediately binding and enforceable, it would make little sense for the Magistrate Judge to have repeatedly extended the deadlines, and to have urged the parties to confer (on their own or at the behest of the Court) to narrow differences and to eliminate problems of clearly expressing the intent of both sides, before the agreement becomes binding. These trips to the conference room, to the telephone, to the e-mail and to the courthouse took place in abundance both before and after September 11, 2017 (they terminated on or about October 13, 2018), and would not have taken place had not the parties and the Magistrate Judge stopped the process at that date, The settlement would have been regarded as binding and enforceable and could have and would have been enforced notwithstanding that gaps remained between and among the prominent terms.

Defendant's argument is not a case of buyer's remorse, or of having second thoughts, or of quibbling over orthographic "issues" of no substantive importance. *Ibid.* Defendant argues simply that the agreement includes how to determine a starting date, a date when it takes effect, and that is the date when both parties approve the written form and sign it, As the R&R notes, the defendants have embraced and ratified the September 11, 2017 form of agreement repeatedly, on the record in open court, and they do so again here. *Ibid.*, p.. 5. The impediments to signature all arose from the plaintiff side after that date, and plaintiffs continue to attribute their unwillingness to sign to those late-arising issues and concerns.

### B.     Plaintiffs Have Continued to Introduce New Issues in Bad Faith

Following is a description of the impediments as they came into being from the plaintiffs' side after September 11, 2017 , and (as indicated) some of them are still very much insisted upon by the plaintiffs. The distinct impression is unavoidable that the plaintiffs could not seriously have proffered some or all of these issues in good faith, but merely harbored some private reservation or idiosyncratic definition, which they never brought into the prior negotiations.

Defendant is the one who was always willing to settle on the terms placed on the record on September 11, 2017. This consisted mainly of payment of the

settlement sum in installments, and by that date was far beyond the point of being at all controversial. Defendants actually signed the memorialization of those terms once again on October 13, 2017 (plaintiffs did not sign). In agreeing to plaintiffs' request to the Magistrate Judge for a further administrative extension, defendant was not making a play for additional time to pay, but rather, was simply accommodating the plaintiffs' request to incorporate a series of issues which were presented by plaintiff as burning issues, which if not resolved would make it impossible to complete the settlement agreement and reduce it to written form. It was plaintiff who was unwilling to sign until these new issues were agreed upon. Plaintiffs' issues were not only presented in bad faith and solely for the purpose of delay, but were as quickly jettisoned by plaintiff when it became clear that defendant would not blindly accept these conditions. Plaintiff then raced back to the September 11 version of the agreement – but not entirely – so as to make it appear that defendant was responsible for the delay. For some inexplicable reason, the Magistrate Judge has given no attention to the fact that all of these issues originated as plaintiff's issues, and that plaintiff was the party who wanted to modify the agreement to accommodate those issues.

ISSUE NO. 1 was the plaintiff's insistence that defendant represent and warrant that no employee of the putative entity, Atlas Hana, LLC, had ever been

employed elsewhere in the world by defendant's company, VisionSoft. It is clear that this issue was raised in bad faith because plaintiff well knew such a statement was false and could not be given under penalty of perjury by defendant. Plaintiff well knew this because plaintiff himself had initiated a prosecution of this individual in India for just such an offense (alleging there that the individual had breached a confidentiality covenant by working for VisionSoft's subsidiary). At the end of the day, plaintiff almost casually states his willingness to waive that element in a final settlement agreement, notwithstanding his bad faith foray.

Both prior to and in extensive detail on October 11, 2017, Defendant Reddy expressed concern about the language of Paragraph 10, Affidavit of Anji Reddy which was insisted upon by plaintiff in light of defendant Vision Soft's subsidiary's hiring of Mr. Gopinathan, the facts of which were well known to the plaintiff. On October 11, 2017, defendants put forward proposed language to modify Paragraph 10 in order to address the above concern.  As late in the discussions as the call with plaintiffs' counsel on October 12, 2017, plaintiffs' counsel indicated that the plaintiffs rejected the proposed language, but then gracefully walked back this issue. It was represented by plaintiffs' counsel that if defendant Reddy would agree to the original language of Paragraph 10, then she

believed her clients would agree to the proposed carve out for Mr. Gopinathan in the Affidavit of Vision Soft Consulting, Inc.

ISSUE NO. 2 was plaintiff's insistence on changing the Payee designated in the agreement. The Court Transcript from September 11, 2017 says that payment will be made to the "Plaintiffs." The defendants understood that this meant the payee should be plaintiff Atlas Hana, LLC, but after the agreement was placed on the record on September 11, 2017, plaintiffs' now took the position as of October 10, 2017, that plaintiff Atlas Systems, Inc., an unrelated entity, not a party to the suit, controlled solely by the plaintiff, should instead be the payee. Plaintiffs' counsel indicated that her clients insisted on plaintiff Atlas Systems, Inc. being the payee. The defendants then agreed to plaintiff Atlas Systems, Inc., being the payee.

ISSUE NO. 3: The defendants stated that they were concerned that the language contained in Paragraph 9 of the Consent Judgment (as proposed by the plaintiffs on September 15, 2017) deviated from the language contained in the Settlement Agreement and the transcript, dated September 11, 2017, which stated that the language of the Settlement Agreement would be incorporated into the Consent Judgment. Counsel for both parties discussed their positions on this paragraph during a conference call on October 10, 2017. The defendants laid out

their position further in an email, dated October 10, 2017. During an October 12, 2017 conference call, plaintiffs' counsel stated that her clients agreed to make the changes necessary so that Paragraph 9 of the Consent Judgment mirrored the Settlement Agreement.

ISSUE NO. 4: After September 11, 2017, plaintiff Chalamala announced he did not want his name to appear on the settlement agreement. This would have the effect of diluting the representations he made. **Plaintiff has never agreed to having his name appear in a written memorialization of the agreement, even though he agreed to this in open court.**

ISSUE NO. 5: The plaintiffs wanted representations that Anji Reddy had no liquid funds from sources not originally specified. As stated in court on September 11, 2017, Anji Reddy made representations that he had only certain sources of cash, that his New Jersey home was mortgaged, and he could not tap into the equity in his home in Virginia because it was his second home and not a primary residence. Now afterwards the plaintiff wanted him to make representations about bonds, mutual funds, 401(k)'s and other possible sources of funds. This demand was different from the September 11, 2017 agreement.

Defendants did not agree with these FIVE NEW POINTS raised by the plaintiff after the settlement terms were placed on the record on September 11.

Defendants always agreed with those original terms, and repeatedly emphasized willingness to sign a written memorialization of those very terms, and that is why the defendants brought a motion to enforce those terms when plaintiff continued to refuse to sign a document reflecting them, with no added terms.

### III.   CONCLUSION

For all the foregoing reasons, defendant, VisionSoft Consulting, Inc. requests that the Court recognize that plaintiffs' refusal to sign the written settlement agreement has resulted in a situation where the settlement agreement has not yet come into force, and is not yet a binding agreement. Accordingly, the Court should deny the motions to enforce (except for the imposition of sanctions upon the plaintiffs), and dismiss both motions with prejudice.

                    Respectfully submitted,

                    s/Joel D. Rosen
                    Joel D. Rosen, Esq.
                    Attorney for Defendant,
                    VisionSoft Consulting, Inc.

Dated: July 17, 2019