## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

ATLAS SYSTEMS, INC., et al.

              Plaintiffs,

         v.

ANJI REDDY, et al.

              Defendants.

Civil Action No. 16-5381 (MAS) (TJB)

**MEMORANDUM OPINION**

**SHIPP, District Judge**

      This matter comes before the Court upon the Report and Recommendation ("R. & R.") of the Honorable Tonianne J. Bongiovanni, U.S.M.J. (ECF No. 51.) *Pro se* Defendant Anji Reddy ("Reddy") filed both a Response in Opposition to the R. & R. and a Motion to Vacate the Settlement. (ECF Nos. 52, 57.) Counsel for Defendant VisionSoft Consulting, Inc. ("VisionSoft") filed a separate Objection in Opposition to the R. & R. (ECF No. 61.)[1] Plaintiffs Atlas Systems, Inc. and Atlas Hana LLC (collectively, "Plaintiffs") request that the Court accept the R. & R. and deny Reddy's Motion to Vacate. (ECF Nos. 53, 54, 55, 56, 58.) The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth below, the Court adopts the R. & R. and dismisses with prejudice Reddy's Motion to Vacate.

---

[1] Defendant Atlas Hana Inc.'s name is spelled variously in court filings. The Court uses the spelling "Hana" and refers to all three Defendants collectively as "Defendants." In correspondence with the Court, Reddy advises Atlas Hana "was dissolved on August 1, 2016." (Reddy Correspondence, ECF No. 66.) The corporate status of Atlas Hana does not change the Court's analysis.

I.      **BACKGROUND**[2]

Plaintiffs provide database design and management, software solutions, and information technology consulting services. (Compl., ECF No. 1.) On or about October 26, 2015, Reddy accepted a position as Executive Vice President of Atlas Systems, Inc. and executed an employment agreement. (*Id.* at 8.) Also in October, Plaintiffs formed Atlas Hana LLC. (*Id.* at 8-9.) Reddy became Chief Executive Officer of Atlas Hana LLC in January 2016, at which time he executed a second employment agreement. (*Id.* at 9.) Plaintiffs allege Reddy engaged in "willful misconduct" shortly thereafter, to Plaintiffs' detriment. (*Id.* at 12.) On April 1, 2016, Reddy informed Plaintiffs he wished to resign, but on May 6, 2016, Plaintiffs terminated Reddy for cause for failure to perform his duties in good faith as required by the two employment agreements. (*Id.* at 21.) Plaintiffs allege Reddy continued violating the terms of the agreements after he was terminated. (*Id.* at 25-26.)

Plaintiffs initiated this matter on September 1, 2016. (*See* Compl.) Defendants filed an answer and counterclaim against Plaintiffs and a third-party complaint against Atlas Systems' President Venugopala Chalamala. (Answer and Countercl. and Third-Party Compl., *Id.*) The parties eventually reached a settlement and the Court issued an order administratively terminating the action. (May 31, 2017 Order, ECF No. 37.) Subsequently, a dispute arose regarding the terms of that settlement.

On September 11, 2017, following a settlement conference before Judge Bongiovanni lasting nearly five and a half hours, the parties put the terms of their settlement agreement on the

---

[2] The Court writes primarily for the parties and assumes they are familiar with the factual background and procedural history of the matter. The Court, accordingly, only recounts those facts and procedural developments necessary to resolve the instant dispute.

record. (Tr. 3:10-9; 4:22-7:15.) In the interest of clarity, given the unique procedural posture of

the case at this juncture, the Court quotes this colloquy at length:

| | |
|---|---|
| THE COURT: | What I'd like to do is place both parties under oath. I'll ask you, Mr. Brown, to outline the salient terms, the important crucial terms. Of course, Ms. Chimbangu, I'll give you a chance, if there's anything that you'd like to emphasize, challenge, elucidate, I'll give you the opportunity to do so.[3] And then we'll ask – I'll have each of you ask your clients if they understand that those are the terms, if there's anything that's missing . . . . |
| MR. BROWN: | Thank you, Your Honor. As we've talked about, Your Honor, there have been various provisions that had been agreed to before today, and I'm not going to recite them. But there was a consent order with restraints and stipulation of dismissal that was circulated between the parties in July. We agreed today that that would be -- that would be turned into a consent judgment, and then the following additional paragraphs or language would be part of a consent judgment. First with respect to payment, Defendant Reddy will pay $50,000 to plaintiffs on or before November 1st of 2017; he will pay $25,000 to plaintiffs on or before April 1st of 2018; he will pay $25,000 on or before June 1st of 2018. In addition, we discussed a document called Atlas Systems, Inc., et al., versus Reddy, et al., prospective client list, which I'd like to mark as Exhibit 1. |
| THE COURT: | I actually have it. |
| MR. BROWN: | You have a copy of that. This is the client list that is subject to the consent judgment in terms of no contact pursuant to the existing terms of the consent judgment through and including November 6th of 2016 . . . . There are two carve-outs that have been mentioned in the settlement agreements -- or the draft settlement agreement between the party: One is with respect to J&J, and the terms in the draft settlement agreement will be incorporated into the consent judgment for that particular customer; And then there's a company called PCF, that was the subject of some discussion today, and there will be a -- the consent judgment would -- will be modified to say that, "For the period of time between May |

---

[3] Mr. Brown was Plaintiff's counsel and Ms. Chimbangu was Defendants' counsel at the time of these proceedings.

11th, 2017 and November 6th of 2017, defendants shall do the following work for PCF: "It would be limited only to Legacy SAP for transition, and there will be a maximum of 200 hours between May 11th, 2017 and November 6th of 2017; "And that Mr. Reddy will have no contact with that customer between now and November 6 of 2017 . . . . In addition, there were affidavits that were circulated, again, between [Plaintiff's counsel] and Ms. Chimbangu's firm in July of 2017. Those affidavits were close to, but not quite final, but the edits were, I think, in a sense, ministerial. And those affidavits would also be incorporated into a consent judgment. **So I think what the plan would be, Your Honor, is to finalize the consent judgment, and send -- as well as the affidavits, and send that document into the Court for execution.**

THE COURT:           Ms. Chimbangu, anything missing?

MS. CHIMBANGU:   **Just -- the only thing I would note,** Your Honor, is when -- I guess counsel is discussing the payment of the monies, he specifically stated that Anji Reddy would make that payment. I just ask that we say that the defendants will make the payments totaling the 100,000.

MR. BROWN:           I would assume that would mean that the defendants would be joint and severally liable for that -- for those payments. (Ms. Chimbangu engaged in off-the-record colloquy with client.)

MS. CHIMBANGU:   **Yes, that's fine, Your Honor.**

(Tr. 3:14-7:12) (emphasis added.)

After the terms above were read into the record, Plaintiffs testified that they understood and agreed to the terms. (Tr. 7:13-8:25.) Reddy also testified that he understood and agreed to the terms, and to additional specified stipulations. Again, in the interest of clarity given the protracted procedural history of this case, the Court quotes Reddy's testimony in full:

THE COURT:           All right. Ms. Chimbangu, your turn with your client, Mr. Reddy, please.

4

MS. CHIMBANGU:   Mr. Reddy, have you heard and understood all the terms that counsel for the plaintiff, Richard Brown, has placed on the record before us all today?

MR. REDDY:   I understood the payment schedule, defendants' collective response for the payments; I understood Exhibit 1 with the 27 clients mentioned here; that I have a non-compete through November 6th, 2017; and the two carveouts, J&J's completely carved out, PCF Limited to Legacy SAP for transition, max 200 hours; and I will not have any contact with him.

MS. CHIMBANGU:   All right. And do you understand all of the terms and the nature of the settlement?

MR. REDDY:   (No verbal response).

MS. CHIMBANGU:   Do you – as you've just repeated those back, do you understand –

MR. REDDY:   Yeah, these terms, I do understand, Your Honor.

THE COURT:   Well, I want to make sure that you also recognize that Mr. Brown has just spent some time, as we've discussed, there are a number of other terms, provisions, not just the payments. There's the payment schedule, which is acceptable to you, that's right?

MR. REDDY:   Right, Your Honor.

THE COURT:   Okay. And then we also talked about an affidavit that you would be producing that discusses important components, you'd make representations regarding any mortgage or loans that have been attached against your home -- your New Jersey home, right?

MR. REDDY:   That's right.

THE COURT:   You've also agreed to make -- prepare an affidavit, and make representations regarding your inability to get a home equity loan on the Virginia property because it's a second home, correct?

MR. REDDY:   That's correct.

| THE COURT: | And also you're going to make representations that you do not have more than $100,000 in liquid assets, correct? |
|---|---|
| MR. REDDY: | In cash, Your Honor. |
| THE COURT: | Or in any bank -- bank account. I mean cash is included in a bank account, or any funds such that you can get access to, okay? Yes? |
| MR. REDDY: | Yes. |
| THE COURT: | And then the fourth has to do with the 200 hours that you are -- you have a carve-out with PCF that you will be able to have then, and will continue to be able to do work from May 11, 2017 through November 6th, 2017. And when I say "you," there's a contract between your company and PCF, but the work is not going to be done directly by you, correct? |
| MR. REDDY: | That's correct. |

(Tr. 9:1-11:2)

The parties' counsel engaged in an extended discussion about the documents containing the terms of the agreement, generally confirming that the parties were referring to the same drafts and adjusting some language in the documents. (*See* Tr. 11:3-14:2.)

| MR. BROWN: | Your Honor. I've spoken with Ms. Chimbangu, there is one outstanding issue that was raised with respect to the J&J carve-out. We need to get a date from Mr. Reddy, which he's committed to try to get to us by tomorrow . . . . Otherwise, we're agreed to the language in the affidavit, the affidavit from Mr. Reddy and the affidavit from Vision Soft, which is also going to be signed from Mr. Reddy . . . . And we're agreed to the other issues that we discussed earlier, other than, again, this language with respect to the J&J carve-out in terms of timing. . . . |
|---|---|
| MS. CHIMBANGU: | And just to clarify, it's a very small issue. There – |
| THE COURT: | So we always suspect. |
| MS. CHIMBANGU: | Of course, right? And that blows up the whole settlement typically . . . . |

| | |
|---|---|
| THE COURT: | Okay. And **what else have you folks been referencing? I know there was discussion about some prior documents that you've been exchanging. Am I attaching anything else to this? Do you know what you're talking about? I don't want to have a mistake later, "Oh, I didn't read that version," and we're fighting over an "and" and an "or" in a document.** |
| MR. BROWN: | Well, what we could do, if you want to mark these, we could mark these two documents . . . . |

(Tr: 14:3-16:3) (emphasis added).

The court entered the two affidavits that Reddy agreed to sign into the record as Joint

Exhibits 2 and 3.

| | |
|---|---|
| MS. CHIMBANGU: | Okay. And we're just entering these for the substance of the versions that we're saying we're all working off. |
| THE COURT: | Yes, because if you come – |
| MS. CHIMBANGU: | Obviously they haven't been signed yet. |
| THE COURT: | **If you come back to me, and you say, "I don't think that's what I agreed to, that's not what I understood," I want to be able to have in my file what you, Mr. Reddy, have looked at that you're conceptually accepting.** |
| MS. CHIMBANGU: | Right. And Mr. Reddy has read both of these, he just wants me to clarify for Your Honor that there's one provision in the Vision Soft consulting agreement, which he's signing on behalf of the company, which requires him to verify and to affirm that any and all documents that reference Atlas have been returned. And sitting here today, he just wants to make sure he has the opportunity to, again, make sure. |
| THE COURT: | Right; he's not signing it. |
| MS. CHIMBANGU: | He's not signing them today. |
| THE COURT: | He's agreeing to do that – |
| MS. CHIMBANGU: | He's agreeing to do it. |

THE COURT:  – and he's going – and he's agreeing that he will sign it once that's been done, once he has –

MS. CHIMBANGU:  Correct.

THE COURT:  For example. **But all of these terms are fine, if there's something that he needs to confirm, he will do that before he signs it. But he's agreeing that he will return all the documents, and he will certify that he has returned all the documents, just speaking to that point.** (Ms. Chimbangu engaged in off-the-record colloquy with her client.)

THE COURT:  **Because you folks can stay here all night, honestly. I don't mean to be – because, look, you started this in May, we've had a number of conferences since. I under – and you've got this one isolated item. But if you're looking at a document, I want to make sure that you're agreeing to the terms of that document before you leave here today.**

MS. CHIMBANGU:  **Understood, Your Honor . . . .**

THE COURT:  **So I was just handed additional exhibits, I already had the Exhibit 1, which was the list of companies. I have Joint Exhibit 2, 3, and 4, affidavit of Mr. Reddy, affidavit of Vision Soft Consulting with some handwritten comments, and then a consent order with restraints and stipulation of dismissal, redline handwritten, but I gather in the concept, the parameters of the change, syntax or something like that to be seen, but all of the salient issues have been addressed in this, yes, Mr. Brown?**

MR. BROWN:  **Yes, Your Honor.** Except, again, the one outstanding issue with respect to J&J, which we're going to get some information from Mr. Reddy, supposedly by tomorrow, that's the only issue. **These represent the -- these other documents represent the agreement between the parties.** And obviously there's going to be a supplement to Mr. Reddy's declaration with the financial information that Your Honor talked about and –

THE COURT:  Based on what we talked about today.

MR. BROWN:  **– other statements that I put in that are going to be added to the consent order in terms of payment terms, and those sorts of – or a consent judgment in terms of payment terms. But other than that, I think we are done for the day.**

8

THE COURT:     Okay . . . . So let me just finish-up with plaintiff. So, Mr. Chalamala, I know we've talked about some additional documents, I just want to make sure they're all acceptable to you.

MR. CHALAMALA: Yes, Your Honor.

THE COURT:     Okay. And then I was having a discussion with Mr. Reddy when this sort of got – went down that sort of rabbit hole, but hopefully we've resurrected it.  So, Mr. Reddy, are you comfortable that you understand all the terms of the settlement?

MR. REDDY:     I do.

THE COURT:     Okay.  And the terms include the documents that have been submitted to me, yes?

MR. REDDY:     Yes.

THE COURT:     And they also include what was placed on the record, which essentially deals with the additional terms to be included in your affidavit, yes?

MR. REDDY:     Yes.

THE COURT:     As well as the payment schedule.

MR. REDDY:     Yes.

THE COURT:     **Anything that you think needs to be discussed?  Anything you think that is missing, other than, again, this J&J issue, which we're reserving, hopefully, until tomorrow?**

MR. REDDY:     (No verbal response.)

THE COURT:     No?  Okay; you shook your head no.  You're –

MR. REDDY:     **No.**

THE COURT:     Okay.  **So you're satisfied with the terms of the settlement?**

MR. REDDY:     **Yes.**

| THE COURT: | Okay. And Ms. Chimbangu and her firm have been representing you throughout this matter. Have you been satisfied with them? |
|---|---|
| MR. REDDY: | Yes. |
| THE COURT: | Okay. So I just turn to both parties, anything you think I'm missing? Anything I need to know? |
| MR. BROWN: | No, other than what I said, just the thanks that I gave earlier. |
| MR. REDDY: | Thank you. |

(*Id*. at 17:2-22-:17) (emphasis added).

On September 12, 2017, Defendants sent Plaintiffs the information Plaintiffs requested on the record regarding the date of VisionSoft's work for a client. (Defs.' Mot. to Enforce Settlement, Ex. G at 83, ECF No. 43-3.) The following day, Plaintiffs sent Defendants the consent judgment and the two affidavits Reddy agreed to sign. (*Id*. at 85.) On Tuesday, September 19, 2019, Defendants sent e-mailed correspondence to Plaintiffs stating:

> Your email attached three documents related to the settlement but did not attach the Settlement Agreement that we had been working on. I understand that some of the terms of the Settlement Agreement were incorporated into the Consent Judgment; however, there remain terms which we view as important in protecting both parties' rights. Please advise as to your position with respect to a separate Settlement Agreement.

(*Id*., Ex. I at 2, ECF No. 43-4.)

The same day, Plaintiffs replied via e-mailed correspondence:

> [W]hen we were before Judge Bongiovanni, we put all of the terms of the agreement on the record. Hence, we marked and agreed on both affidavits, the customer list, and a consent judgment, which incorporated certain terms of the draft settlement agreement, among other terms. As a result, we did not intend to have a separate settlement agreement. If there is some provision that had been in the settlement agreement that needs to be in the consent judgment, please let us know."

(*Id.*, Ex. J at 5.)

On Thursday, September 21, via e-mailed correspondence, Defendants sent Plaintiffs a series of provisions to incorporate into the consent judgment, including some drawn from the draft settlement agreement the parties had discussed before the judge. (*Id.*, Ex. K at 9).  Defendants also requested the insertion of a new non-disparagement clause.  (*Id.*)  Plaintiffs agreed to incorporate the language that had appeared in the draft settlement, but not the new language regarding the non-disparagement clause.  (*Id.*, Ex. L at 11.)  Defendants then proposed additional changes, including changes related to "developments which took place after the settlement conference."  (*Id.*, Ex. N at 17; Ex. O at 34.)  On Tuesday, September 26, Plaintiffs wrote in via e-mailed correspondence:

> The purpose of marking joint exhibits and placing other terms of the settlement agreement on the record on September 11, 2017 before Judge Bongiovanni was to avoid seemingly endless changes by your client.  Notwithstanding those efforts, your client insists on making various substantive changes that deviate from the agreement placed on the record on September 11, 2017. Our client's patience with these antics has run out. Unless your client relents and agrees to the language of the affidavits that were placed on the record, and agree to the substantive terms also placed on the record, we will raise these issues with Judge Bongiovani, and seek fees for those efforts."

(*Id.*, Ex. P at 41.)

After additional e-mailed correspondence between the parties, Plaintiffs wrote to Defendants on October 9, 2017, rejecting several proposed changes to the language of agreements, accepting some stylistic changes, and stating, "A settlement means something, and is not an invitation to renege on agreed-to terms simply because the parties' lawyers are trying to get documents in a form that can be signed . . . there should be no other changes.  (*Id.*, Ex. Y at 34, ECF No. 43-5.)

On Tuesday, October 10 and 11, 2017, Defendants sent Plaintiffs e-mail correspondence addressing additional concerns about the language of the consent order and affidavits.  (*Id.*, Exs.

Z, YY.)  In the latter correspondence, Defendants wrote that upon a "critical read," Reddy could not sign the affidavit on behalf of VisionSoft, as he had agreed to do under oath.  (*Id.*, Ex. YY.) Defendants explained the affidavit stated that neither VisionSoft nor its subsidiaries had hired any of Plaintiff's employees other than Reddy himself, but in fact a VisionSoft subsidiary had hired such an employee.  (*Id.*)   On October 13, 2017, Defendants sent additional e-mailed correspondence to Plaintiffs, stating, "Attached are the updated drafts of the settlement documents. My clients have approved all three documents in their attached form and have no changes.  My clients are prepared to sign the documents as soon as we receive confirmation that you have final approval from your clients as well."  (*Id.*, Ex. BB.)

On October 13, 2017, Plaintiffs filed correspondence with the court requesting an extension of the court's deadline to finalize the settlement documents, stating, "The parties are working through some changes to the documents that were submitted as exhibits to the Court."  (Pls.' Oct. 13, 2017 Corr., ECF No. 40.)  Judge Bongiovanni granted the request.  (Oct. 19, 2017 Order 1, ECF No. 42.)  On November 9, 2017, the parties filed competing motions to enforce settlement and impose sanctions.  (ECF Nos. 43, 44.)

In their Motion, Defendants alleged that on October 12, 2017, the parties achieved a "meeting of the minds" regarding the terms of a new settlement agreement (the "October Agreement"), which they sought to enforce.  (Defs.' Motion to Enforce, ECF No. 43.)  Defendants also asked the Court to award them attorney's fees and costs associated with their motion.  (Defs.' Motion to Enforce 24.)  Plaintiffs opposed (Pls.' Opp'n Br., ECF No. 45) and Defendant replied (Defs.' Reply Br., ECF No. 48).

In Plaintiffs' Motion to Enforce the September Agreement, Plaintiffs argued Defendants were bound by the September Agreement denying that a separate October Agreement existed.

(Pls.' Motion to Enforce, ECF No. 44.)  Plaintiffs requested that the Court enforce the September Agreement and award Plaintiffs costs and fees associated with their motion.  (*Id.*)  Defendants opposed (Defs.' Opp'n Br., ECF No. 45) and Plaintiffs replied (Pls.' Reply Br., ECF No. 47).

In their respective motions, both parties raised concerns regarding the affidavit Reddy agreed, under oath, to sign at the September settlement conference.  (Tr. 21:11-22:8).  Defendants argued the October Agreement should be enforced because it resolved the issue about the VisionSoft subsidiary's hiring of a former Plaintiffs' employee, while Plaintiffs asked the Court to enforce the September Agreement with the affidavit amended to prevent Reddy from signing a false statement.  (Defs.' Mot. to Enforce 2-3; Pls.' Mot. to Enforce 10, 16.)

On June 26, 2018, Judge Bongiovanni issued an R. & R. recommending that the Court deny Defendants' Motion to Enforce the October Agreement and Defendants' request for attorneys' fees and costs.  (R. & R. 17-18.)  Judge Bongiovanni further recommended that the Court grant Plaintiffs' Motion to Enforce the September Agreement, and that sanctions against Defendants be granted in part.  (*Id.*)  The R. & R.  notes "[a] settlement is a type of contract" and that federal courts look to state contract law to determine whether an enforceable settlement agreement exists.  (R. & R. 1.)  The R. & R. states that under New Jersey law, "As long as [the] essential terms are agreed to, 'the settlement will be enforced notwithstanding the fact that a writing does not materialize because a party later reneges.'"  (R. & R. 9) (citing *McDonnell v. Engine Distributors*, Civil Action No. 03-1999, 2007 WL 2814628, a \*3 (D.N.J. Sept. 24, 2007)) (quoting *Lahue v. Pio Costa,* 263 N.J. Super. 575, 596 (App. Div. 1993)).  "So long as the basic essentials are sufficiently definite, any gaps left by the parties should not frustrate their intention to be bound." (R. & R. 9) (quoting *Berg Agency v. Sleepworld*, 136 N.J. Super. 369, 376 (App. Div. 1975)).

In this case, Judge Bongiovanni wrote:

> "[T]he parties . . . reached an enforceable settlement agreement on
> September 11, 2017 . . . . The parties did not, as Defendants argue,
> reach a settlement on October 13, 2017.  Instead, [Defendants' court
> filings] . . . indicate that far from there being an agreement,
> Plaintiffs took issue with several of the changes Defendants were
> attempting to make to the September 11, 2017 settlement . . . .
> Defendants' motion papers indicate that Defendants were trying to
> significantly alter the landscape of the settlement reached on
> September 11, 2017. Such buyer's remorse shall not be
> countenanced.

(*Id.* at 9, 17.)

The R. & R. further recommended that the Court award Plaintiffs' the attorneys' fees and

costs associated with their motion, citing Third Circuit precedent that a court may award attorneys'

fees and costs "to a successful party when his opponent has acted in bad faith, vexatiously,

wantonly, or for oppressive reasons."  (R. & R. at 18) (quoting *Ford v. Temple Hosp.*, 790 F.2d

342, 346 (3d Cir. 1986) (citations omitted).  Rather than adhering to the terms Defendants agreed

to under oath on September 11, 2017, the R. & R. noted "Defendants reneged . . . and attempted

to renegotiate a new and presumably better deal for them.  This is unacceptable under any

circumstances, but particularly troubling when the September 11, 2017 settlement conference did

not represent the parties' first attempt at settlement." (R. & R. 18.)  Rather than granting Plaintiff's

request that Defendants pay interest on the $50,000 that would have been due on November 1,

2017 under the September Agreement, the R. & R. recommended "setting a deadline by which

Defendants shall pay the entire $100,000 due . . . [and] requiring Defendants to pay interest on all

monies not promptly paid by that date." (Pl.'s Mot. to Enforce Settlement 2; R. & R. 19.)

On July 25, 2018, representing himself *pro se*, Reddy filed a Reply in Opposition to the R. & R. (Reddy Obj., ECF 52).[4] Defendants' counsel never formally withdrew their appearance as required by Local Civil Rule 102.1 and this Court's direct orders. (July 3, 2019 Order, ECF No. 59; July 23, 2019 Order, ECF No. 63; July 29, 2019 Correspondence, ECF No. 64.)

On December 14, 2018, Reddy filed a Motion to Vacate the September Agreement, stating "the settlement has failed . . . . [Reddy is] without power to force [Plaintiffs] to keep their word, and should not incur additional injury trying to do so." (Mot. to Vacate 2, ECF No. 57.) Plaintiffs filed correspondence reiterating their position that the Court should enforce the September Agreement. (Pls.' Dec. 18, 2018 Corr., ECF No. 58.) On July 17, 2019, VisionSoft filed a separate Objection in Opposition to the R. & R. (VisionSoft Obj., ECF No. 62).

## II.   LEGAL STANDARD

The standard of review applied by a district court to a magistrate judge's R. & R. depends upon whether the motion is dispositive or non-dispositive. *Glen Ridge SurgiCenter, LLC v. Horizon Blue Cross & Blue Shield of New Jersey*, No. 08-6160, 2011 WL 5882019, at *2 (D.N.J. Nov. 22, 2011). With respect to dispositive motions, the district court must make a *de novo* determination of those portions of the magistrate judge's report to which a litigant has filed an objection. *Id.*; 28 U.S.C. § 636(b)(1); *see also SpaceAge Consulting Corp. v. Logic Corp.*, No. 15-3413, 2018 WL 3159867, at *1 (D.N.J. May 31, 2018) (finding a magistrate judge's recommended disposition of dispositive matter is subject to *de novo* review). In the instant case,

---

[4] Reddy also purported to represent VisionSoft in these *pro se* filings. Noting Third Circuit precedent requires counsel to represent corporations, the Court provided VisionSoft and Defendant Atlas with a final opportunity to oppose the R. & R. in a properly filed submission. (July 3, 2019 Order 2.) Only counsel for VisionSoft made such a submission. (VisionSoft Obj., ECF 62). Therefore, the Court considers the R. & R. unopposed by Defendant Atlas. The Court recognizes Reddy as a *pro se* litigant for the instant motions and objections and notes documents filed *pro se* are "to be liberally construed." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

the parties' Motions to Enforce are dispositive in nature. *Glen Ridge SurgiCenter*, 2011 WL 5882019, at *3 (reviewing movant's motion to enforce settlement *de novo*); *see also Logic Corp.*, *supra* (treating plaintiff's motion to enforce settlement as motion seeking dispositive relief).

Local Civil Rule 72.1(c)(2) requires an objecting party to "serve on all parties written objections which shall *specifically identify* the portions of the proposed . . . recommendations or report to which objection is made and the basis of such objection." (emphasis added). The same rule requires the court to "make a *de novo* determination of those portions to which objection is made" and states the court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge." L.Civ.R. 72.1(c)(2); *accord* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). Where the objection is "not timely . . . or not specific[,]" a *de novo* determination is not required. *Goney v. Clark*, 749 F.2d 5, 6-7 (3d Cir. 1984) (citations omitted) (concluding that the "plaintiff's objections lacked the specificity necessary to trigger *de novo* review"); *accord Brown v. Astrue*, 649 F.3d 193, 195 (3d Cir. 2011).

III.   **DISCUSSION**

Defendants' objections to the R. & R. lack the necessary specificity to trigger a *de novo* review. Reddy identifies no specific finding or conclusion to which he objects, nor does he identify a specific claim or portion of the R. & R. to which he objects. (*See generally* Reddy Obj., VisionSoft Obj.) In fact, VisionSoft affirmatively states in its purported objection that Defendants *agree* with Judge Bongiovanni's recommendation to enforce the September Agreement. (VisionSoft Obj. 5) ("defendants have embraced and ratified the September 11, 2017 form of agreement repeatedly . . . and do so again here.") In sum, Defendants' objections are insufficient under the Local Civil Rules and Third Circuit precedent to trigger a *de novo* review of the R. & R. The Court, accordingly, reviews the R. & R. for clear error.

16

The Court notes, however, the Third Circuit's counsel that while the Federal Magistrates Act "may not require, in the absence of objections, the district court to review the magistrate's report before accepting it . . . the better practice is for the district judge to afford some level of review to dispositive legal issues raised by the report." *Henderson v. Carlson*, 812 F.2d 874, 878 (3d Cir. 1987). The Court finds a heightened level of review especially prudent in light of the parties' difficulties to date in resolving this dispute, notwithstanding Judge Bongiovanni's significant investments of time and judicial resources.

The Court, accordingly, has reviewed the record under the appropriate standard and agrees with Judge Bongiovanni's well-reasoned analysis. For reasons set forth below, and for other good cause shown, the Court adopts the R. &. R. and dismisses with prejudice Reddy's Motion to Vacate the September Agreement.

### A.    The Court Adopts the R. & R.

The enforceability of settlement agreements is governed by state contract law. *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 582 (3d Cir.2009); *Metro. Life Ins. v. Hayes-Green*, No. 07–2492, 2008 WL 2119976, at *1 (D.N.J. May 20, 2008). Under New Jersey state law, "[a] settlement between parties to a lawsuit is a contract . . . which may be freely entered into and which a court, absent a demonstration of fraud or other compelling circumstances, should honor and enforce as it does other contracts." *Jennings v. Reed*, 885 A.2d 482, 488 (App. Div. 2005) (quotation and internal citations omitted). In New Jersey, there is a strong public policy in favor of settlements. *Nolan v. Lee Ho*, 577 A.2d 143, 146 (1990). Therefore, courts will "strain to give effect to the terms of a settlement whenever possible." *Dep't of Pub. Advocate v. N.J. Bd. of Pub. Util.*, 503 A.2d 331, 333 (App.Div.1985); *see also Borough of Haledon v. Borough of N. Haledon*, 817 A.2d 965, 975 (App.Div.2003).

While a court will not enforce a settlement agreement "where there appears to have been an absence of mutuality of accord between the parties or their attorneys in some substantial particulars, or the stipulated agreement is incomplete in some of its material and essential terms," a settlement agreement does not need to contain every possible term to be enforceable. *Bistricer v. Bistricer*, 555 A.2d 45, 47 (Ch. Div. 1987) (quoting *Kupper v. Barger*, 111 A.2d 73, 75 (App. Div. 1955)). Rather, "[s]o long as the basic essentials are sufficiently definite, any gaps left by the parties should not frustrate their intention to be bound." *Id.*

Here, the Court finds sufficient evidence to support Judge Bongiovanni's conclusion that the parties agreed to the essential terms of the Settlement Agreement. The September 11, 2017 transcript reflects that the Parties spent more than five hours in settlement discussions and established the terms of the agreement. (Tr. 3:9-16, 7:21-8: 25, 21:2-22:17.) Judge Bongiovanni, notably, had both parties confirm on the record that the consent order, two affidavits, and stipulations agreed to by Reddy under oath contained the essential terms. (Tr. 5:3-7:12; 7:16-8:25; 9:1-11:6; 13:16-18; 15:18-24; 17:4-13; 19:22-20:20; 21:2-22:17.) Specifically, the Court recognizes the following as the essential terms:

- Those set forth in the consent order and client list entered by the Court as Joint Exhibit 4 and 1 respectively (attached), with any alterations either noted in the document or to which the parties stipulated on the record before Judge Bongiovanni during the September settlement conference (transcript attached).

- Those set forth in the affidavits of Reddy and VisionSoft entered by the Court as Joint Exhibit 2 and 3 (attached). The language in paragraph 10 of the Reddy affidavit and paragraph 6 of the VisionSoft affidavit may be amended to reflect the VisionSoft

subsidiary's hiring of one of Plaintiff's former employees, thus preventing Reddy from signing a false statement.

- Any additional stipulations made under oath during the September settlement conference, specifically including that Reddy will "make representations regarding any mortgage or loans that have been attached against [his New Jersey home, and] prepare an affidavit, and make representations regarding [his] inability to get a home equity loan on the Virginia property . . . [and] that [he does] not have more than $100,000 in liquid assets . . . [including] any funds such that [he] can get access to." (Tr. 10:3-18.)

An additional essential term agreed to before Judge Bongiovanni established a schedule for the $100,000 in total payments owed to Plaintiffs by Defendants. These funds have not yet been paid, and the passage of time has made the original schedule inapplicable. In keeping with Judge Bongiovanni's recommendation, the Court will grant the parties a limited time to agree to a deadline by which Defendants must pay the entire $100,000 owing. If the parties are unable to agree to a timeline by the ordered deadline, the Court will set a payment schedule. In addition, the Court will require Defendants to pay interest on all monies not promptly paid by these deadlines.

## B.    Defendants Must Pay Plaintiff's Attorneys' Fees and Costs

The Court is additionally persuaded by Judge Bongiovanni's recommendation that Plaintiffs be awarded attorneys' fees and costs associated with filing their Motion to Enforce and opposing Defendants' competing Motion. Having closely reviewed the record, the Court agrees with Judge Bongiovanni's well-reasoned analysis. "The general rule of law, known as the 'American Rule,'" is that each party to a lawsuit bears its own attorneys' fees . . . . One of the exceptions authorizes a federal court to award counsel fees to a successful party "when his

19

opponent has acted 'in bad faith, vexatiously, wantonly, or for oppressive reasons." *Ford*, 790 F.2d at 346. In the instant case, the record reflects that the parties agreed to the essential terms of the Settlement Agreement on September 11, 2017. Defendants' own exhibits demonstrate that Defendants repeatedly sought to alter the terms of the September Agreement over Plaintiffs' explicit objections. (Defs.' Motion to Enforce, Ex. B 2, 5, 9, 11, 17, 34, 41, 65, 71, ECF No. 43-4; Ex. B 2, 16, 34, 37, 55, ECF. No. 43-5.) As Judge Bongiovanni wrote, "There is simply no reason Plaintiffs should have had to have engaged in this motion practice. The terms of the parties' [September] settlement agreement were clear as was their intent to be bound." (R. & R. 18.) Therefore, the Court adopts the recommendation to award Plaintiffs attorneys' fees and costs associated with filing their Motion to Enforce Settlement.

### C.   Defendants' Objections Are Unpersuasive

Both VisionSoft and Reddy have filed substantially identical objections to the R. & R. For the reasons set forth below, the Court finds their arguments inapposite or unpersuasive.

VisionSoft argues the September 11, 2017 agreement is not binding because the "the parties have reserved the right to require that a written document be signed as the precondition for the parties to be bound and for the settlement to take effect." (VisionSoft Obj. 3.) VisionSoft exclusively cites Second Circuit precedent and New York State common law in support of this position. (*Id.*) This Court, however, is bound not by the Second Circuit or by New York law, but rather by Third Circuit precedents and New Jersey law, in which it is well-established that "[a]s long as [the] essential terms are agreed to, 'the settlement will be enforced notwithstanding the fact that a writing does not materialize because a party later reneges.'" *McDonnell*, 2007 WL 2814628, at *3 (quoting *Lahue*, 263 N.J. Super. at 596).

The Court is not persuaded by VisionSoft's remaining objections, which are almost identical to Reddy's. (*See* Reddy Obj. 2-6; VisionSoft Obj. 5-10.) Both VisionSoft and Reddy raise concerns related to the affidavit regarding VisionSoft's hiring of a former employee of Plaintiff's. (Reddy Obj. 3; VisionSoft Obj. 7.) Both VisionSoft and Reddy accuse Plaintiff of bad faith in insisting that Reddy sign the affidavit because Plaintiffs allegedly knew prior to the September settlement conference that Defendants could not sign it truthfully. (*Id.*) The issue of bad faith, however, is both undermined and rendered moot by Plaintiffs' request that the Court enforce the September Agreement with the affidavit amended to prevent Reddy from signing a false statement. (Pls.' Mot. to Enforce Settlement 10, 16.) Therefore, the Court need not entertain objections from VisionSoft and Reddy pertaining to this affidavit.

VisionSoft and Reddy's remaining objections all pertain to requests made by Plaintiffs during the parties' negotiations following the September settlement agreement, as they sought to memorialize their agreement. (Defs.' Response in Opp'n 3; VisionSoft Obj. 8-10.) "The fact that the parties have been unable to agree on the differing terms contained in their proposed memorializations does not necessarily have any bearing on the overall validity of their settlement." *McDonnell v. Engine Distributors*, No. 03-1888, 2007 WL 2814628, at *7 (D.N.J. Sept. 24, 2007). VisionSoft represents in its own Objection that "Defendant . . . was always willing to settle on the terms placed on the record on September 11, 2017." (VisionSoft Obj. 5.) Reddy states in his Objection, "[Defendants] always agreed with those terms, we repeatedly emphasized our willingness to sign a written memorialization of those very terms." (Reddy Obj. 6.) Thus, despite Reddy and VisionSoft's purported objections to the R. & R., both state that they are amenable to its essential recommendation, which is for this Court to enforce the terms of September Agreement. Therefore, the Court declines to entertain these objections.

### D.    Reddy's Motion to Vacate is Dismissed with Prejudice

The Court now turns to Reddy's Motion to Vacate the Settlement. "New Jersey courts generally disallow vacating settlement agreements absent a showing of fraud, mutual mistake, or other compelling circumstances." *Lang v. Tewskbury Twp.*, No. 10-2564, 2012 WL 503677, at \*3 (D.N.J. Feb. 15, 2012) (citing *Nolan by Nolan v. Lee Ho,* 577 A.2d 143, 146 (N.J. 1990). "Before vacating a settlement agreement, our courts require clear and convincing proof that the agreement should be vacated." (internal quotation omitted) (citing *DeCaro v. DeCaro*, 97 A.2d 658, 661 (N.J. 1953) (*see also Brundage v. Estate of Carambio,* 951 A.2d 947, 961 (2008) ("settlements will usually be honored 'absent compelling circumstances'").

Reddy provides no facts in his Motion to demonstrate a compelling circumstance in this case.   His three-paragraph Motion consists of three claims unrelated to the substance or circumstances of the September Agreement.   (Defs.' Mot. to Vacate 1.)   Specifically, Reddy alleges that Plaintiffs engaged in (1) *ex parte* communications with the Court;[5] (2) "stalling tactics" after the September settlement conference; and (3) a "dishonest and hardly secret campaign to harass the defendants in the conduct of their business, committing new harms without justification or excuse, and making false accusations to the Court." (Defs.' Mot. to Vacate 1.) Reddy provides no facts to support these allegations.   Indeed, his claims regarding Plaintiff's alleged "stalling tactics" are belied by the record, which shows Plaintiffs were prepared to proceed with the September Agreement and that Defendants' repeated requests for changes prompted the

---

[5] The Court addressed Defendants' allegations regarding *ex parte* communications in its July 3, 2019 Order.   Specifically, the Court found Plaintiff's communications were not constitute *ex parte* because they were made using the Court's e-filing system, and electronic copies were sent directly to Defendants' attorneys of record.   (July 3, 2019 Order 2-3.)

subsequent delay.  (Defs.' Motion to Enforce, Ex. B 2, 5, 9, 11, 17, 34, 41, 65, 71, ECF No. 43-4; Ex. B 2, 16, 34, 37, 55, ECF. No. 43-5.)

For the foregoing reasons, the Court declines to entertain these objections and dismisses Reddy's Motion to Vacate the September Settlement Agreement with prejudice.

IV.   **CONCLUSION**

For the foregoing reasons, the Court adopts the R. & R. issued by Judge Bongiovanni as the findings of fact and conclusions of law of this Court and dismisses with prejudice Reddy's Motion to Vacate the Settlement Agreement.

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

Dated: December 4, 2020